# 24-0791-cv

## United States Court of Appeals
### *for the*
### Second Circuit

FLINTLOCK CONSTRUCTION SERVICES, LLC,

*Petitioner-Appellant,*

— v. —

ARCH SPECIALTY INSURANCE COMPANY,
CATLIN SPECIALTY INSURANCE COMPANY,

*Respondents-Appellees,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## PETITIONER-APPELLANT

LARRY B. HOLLANDER
THANBIR AHMED
HOLLANDER LAW GROUP, PLLC
*Attorneys for Petitioner-Appellant*
40 Cutter Mill Road, Suite 203
Great Neck, New York 11021
(516) 498-1000

CP COUNSEL PRESS   (800) 4-APPEAL • (330674)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Flintlock Construction Services, LLC, hereby states that it is not owned by any parent corporation and no publicly held corporation owns 10% or more of its stock and/or membership interests.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ...............................................................................1

PRELIMINARY STATEMENT ........................................................1

JURISDICTIONAL STATEMENT ...................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...............4

STATEMENT OF THE CASE............................................................5

    A.    NATURE OF THE ACTION.................................................5

    B.    RELEVANT PROCEDURAL HISTORY........................14

    C.    THE RESULTS BELOW....................................................15

SUMMARY OF THE ARGUMENTS ..............................................16

STANDARD OF REVIEW ...............................................................19

ARGUMENT .....................................................................................23

    I.    THE DISTRICT COURT ERRED BY FAILING TO GIVE EFFECT TO THE PARTIES CHOICE-OF-LAW PROVISION IN BOTH THE SETTLEMENT AGREEMENT AND SDI POLICY..................................23

    II.    THE DISTRICT COURT ERRED IN ITS DETERMINATION THAT THE PANEL DID NOT EXCEED ITS CONTRACTUALLY DESIGNATED AUTHORITY..............................................................26

        A.    The Panel Exceeded Its Enumerated Authority and Powers by Partially Vacating the Interim Award.....................26

        B.    The Panel Exceeded Its Enumerated Authority and Powers by Rewriting the Settlement Agreements Between FCS, the Concrete Companies, Kings and BMNY........................................................................33

C.   The Panel Exceeded Its Powers by Failing to Acknowledge the Preclusive Effect of The Interim Award .......................................................................... 37

III.   THE DISTRICT COURT ERRED IN ITS DETERMINATION THAT THE AWARD DOES NOT VIOLATE PUBLIC POLICY ............................................................ 41

IV.   THE DISTRICT COURT ERRED IN ITS DETERMINATION THAT THE AWARD IS NOT TOTALLY IRRATIONAL ................................................................ 43

V.   THE DISTRICT COURT ERRED IN ITS DETERMINATION THAT THE AWARD IS NOT IN MANIFEST DISREGARD OF THE LAW ........................................ 46

CONCLUSION ................................................................... 47

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. Int'l Specialty Lines Ins. Co. v. Allied Capital Corp.,*
  35 N.Y.3d 64, 125 N.Y.S.3d 340, 149 N.E.3d 33 (2020) ............................ 21, 28

*Anderson v. Bessemer City,*
  470 U.S. 564, 105 S. Ct. 1504 (1985) ...................................................19

*Badgerow v. Walters,*
  596 U.S. 1, 142 S. Ct. 1310 (2022) ......................................................24

*Barbier v. Shearson Lehman Hutton Inc.,*
  948 F.2d 117 (2d Cir. 1991) ...............................................................23

*Bayshore Family Partners, L.P. v.*
  *Found. of Jewish Philanthropies of the Jewish Fed'n,*
  270 A.D.2d 374, 704 N.Y.S.2d 631 (2d Dep't 2000) ...................................39-40

*Bd. of Educ. v. N. Babylon Teachers' Org.,*
  104 A.D.2d 594 (2d Dep't 1984) ................................................... 34, 44

*Bechtel Do Brasil Construções Ltda. v. UEG AraucÁria Ltda.,*
  638 F.3d 150 (2d Cir. 2011) ...............................................................23

*Beijing Shougang Mining Inv. Co. v. Mongolia,*
  11 F.4th 144 (2d Cir. 2021) ...............................................................22

*Burmah Oil Tankers, Ltd. v. Trisun Tankers, Ltd.,*
  687 F. Supp. 897 (S.D.N.Y. 1988) ........................................................38

*Cashman v. N.H. Merchs. Ins. Co.,*
  42 A.D.2d 732, 345 N.Y.S.2d 668 (2d Dep't 1973) .....................................28

*Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.,*
  189 F.3d 289 (2d Cir. 1999) ...............................................................20

*Cohoes City Sch. Dist. v. Cohoes Teachers Ass'n,*
  40 N.Y.2d 774, 390 N.Y.S.2d 53, 358 N.E.2d 878 (1976) ..............................41

*Collins & Aikman Floor Coverings Corp. v. Froehlich,*
  736 F. Supp. 480 (S.D.N.Y. 1990) ........................................................34

*Commercial Union Ins. Co. v. Lines,*
  378 F.3d 204 (2d Cir. 2004) ...............................................................42

*Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv.*,
  96 Civ. 6441 (PKL), 2000 U.S. Dist. LEXIS 558 (S.D.N.Y. Jan. 24, 2000) . 45-46

*Credit Suisse AG v. Graham*,
  533 F. Supp. 3d 122 (S.D.N.Y. 2021) ................................................................38

*Denney v. BDO Seidman, L.L.P.*,
  412 F.3d 58 (2d Cir. 2005).................................................................................20

*Denson v. Donald J. Trump for President, Inc.*,
  180 A.D.3d 446, 116 N.Y.S.3d 267 (1st Dep't 2020)................................. 21, 26

*Diamond Waterproofing Sys. v. 55 Liberty Owners Corp.*,
  4 N.Y.3d 247, 793 N.Y.S.2d 831, 826 N.E.2d 802 (2005) ..................................23

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
  333 F.3d 383 (2d Cir. 2003)......................................................................... 22-23

*Eljer Mfg., Inc. v. Kowin Dev. Corp.*,
  14 F.3d 1250 (7th Cir 1994), *cert. denied* 512 U.S. 1205, 129 L. Ed. 2d 810
  (1994)...............................................................................................................46

*Fahnestock & Co. v. Waltman*,
  935 F.2d 512 (2d Cir. 1991)..............................................................................27

*Fisher v. Aetna Life Ins. Co.*,
  32 F.4th 124 (2d Cir. 2022)...............................................................................19

*Fishman v. Roxanne Mgmt.*,
  24 A.D.3d 365, 806 N.Y.S.2d 541 (1st Dep't 2005) ...........................................34

*Flintlock Constr. Servs., LLC v. Arch Specialty Ins. Co.*,
  2024 U.S. Dist. LEXIS 35261 (S.D.N.Y. Feb. 29, 2024)............................. 15, 20

*Gaia House Mezz LLC v. State St. Bank & Tr. Co.*,
  720 F.3d 84 (2d Cir. 2013)................................................................................19

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
  552 U.S. 576, 128 S. Ct. 1396 (2008) ......................................................... 22, 28

*Harper Ins. Ltd. v. Century Indem. Co.*,
  819 F. Supp. 2d 270 (S.D.N.Y. 2011) ................................................................24

*Honeywell, Inc. v. Firequench, Inc.*,
  96 Civ. 0694 (DLC)(AJP), 1997 U.S. Dist. LEXIS 21452
  (S.D.N.Y. Aug. 15, 1997) ..................................................................................24

*IBEW, Local 97 v. Niagara Mohawk Power Corp.*,
    143 F.3d 704 (2d Cir. 1998)...................................................... 41-42

*Intrepid Invs., LLC v. Selling Source, LLC*,
    159 A.D.3d 508, 73 N.Y.S.3d 531 (1st Dep't 2018) ............................21

*Jock v. Sterling Jewelers Inc.*,
    646 F.3d 113 (2d Cir. 2011) ....................................................27

*In re Josey v. Goord*,
    9 N.Y.3d 386, 849 N.Y.S.2d 497, 880 N.E.2d 18 (2007) ...................38

*Katz v. Feinberg*,
    167 F. Supp. 2d 556 (S.D.N.Y. 2001) ....................................34

*Katz v. Feinberg*,
    290 F.3d 95 (2d Cir. 2002)...................................... 27, 34, 36

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
    729 F.3d 99 (2d Cir. 2013) ...................................... 19, 21

*Lee v. BSB Greenwich Mortg. Ltd. P'ship*,
    267 F.3d 172 (2d Cir. 2001)....................................................19

*Leeward Constr. Co. v. Am. Univ. of Antigua - Coll. of Med.*,
    826 F.3d 634 (2d Cir. 2016)....................................................22

*Mastrobuono v. Shearson Lehman Hutton*,
    514 U.S. 52, 115 S. Ct. 1212 (1995) ....................................23

*Matter of 936 Second Ave. L.P. v. Wilson Evans 50th LLC*,
    171 A.D.3d 499, 96 N.Y.S.3d 527 (1st Dep't 2019) ............................21

*Matter of Bd. of Managers of 225 E. 57th St. Condo.
    v. Campaniello Real Estate*,
    41 A.D.3d 163, 837 N.Y.S.2d 644 (1st Dep't 2007) ................... 26-27

*Matter of City of N.Y. v. Dist. Council 37*,
    161 A.D.3d 435, 76 N.Y.S.3d 538 (1st Dep't 2018) ............................34

*Matter of Council of Sch. Supervisors & Adm'rs, Local 1
    v. N.Y.C. Dep't of Educ.*,
    87 A.D.3d 883, 929 N.Y.S.2d 578 (1st Dep't 2011)................. 26, 41, 43

*Matter of Falzone v. N.Y. Cent. Mut. Fire Ins. Co.*,
    15 N.Y.3d 530, 914 N.Y.S.2d 67, 939 N.E.2d 1197 (2010) .................37

*Matter of Jackson v. Main St. Am. Grp.,*
   210 A.D.3d 501, 176 N.Y.S.3d 487 (1st Dep't 2022) .................................... 20-21

*Matter of Joan Hansen & Co., Inc.*
   *v. Everlast World's Boxing Headquarters Corp.,*
   13 N.Y.3d 168, 889 N.Y.S.2d 886 (2009)............................................................26

*Matter of Kowaleski (New York State Dep't of Corr. Servs.),*
   16 N.Y.3d 85, 917 N.Y.S.2d 82, 942 N.E.2d 291 (2010) ....................................26

*Matter of N.Y.C. Transit Auth. v. Phillips,*
   162 A.D.3d 93, 75 N.Y.S.3d 133 (1st Dep't 2018)..............................................41

*Matter of People of the State of N.Y. v. N. Leasing Sys., Inc.,*
   193 A.D.3d 67, 142 N.Y.S.3d 36 (1st Dep't 2021) .............................................20

*Matter of People v. Applied Card Sys., Inc.,*
   11 N.Y.3d 105, 894 N.E.2d 1, 863 N.Y.S.2d 615 (2008) ........................ 37, 39, 40

*Matter of Rose Castle Redevelopment II, LLC v. Franklin Realty Corp.,*
   184 A.D.3d 230, 126 N.Y.S.3d 2 (1st Dep't 2020)................................. 21, 34, 36

*Matter of Spear, Leeds & Kellogg v. Bullseye Sec.,*
   291 A.D.2d 255, 738 N.Y.S.2d 27 (1st Dep't 2002) ...........................................43

*Matter of Springs Cotton Mills (Buster Boy Suit Co),*
   275 A.D. 196, 88 N.Y.S.2d 295 (1st Dep't 1949), *aff'd*, 300 N.Y. 586 ..............28

*Matter of Verille v. Jeanette,*
   163 A.D.3d 830, 81 N.Y.S.3d 479 (2d Dep't 2018) ............................................21

*Matter of Zurich Am. Ins. v. Hereford Ins. Co.,*
   173 A.D.3d 880, 104 N.Y.S.3d 130 (2nd Dep't 2019) ........................................39

*Melun Indus. v. Strange,*
   898 F. Supp. 995 (S.D.N.Y. 1992)........................................................................46

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin,*
   766 N.Y.S.2d 1 (1st Dep't 2003) ..........................................................................37

*Motor Vehicle Accident Indemnification Corp. v. Travelers Ins. Co.,*
   246 A.D.2d 420, 667 N.Y.S.2d 741 (1st Dep't 1998) .........................................37

*N. River Ins. Co. v. Allstate Ins. Co.,*
   866 F. Supp. 123 (S.D.N.Y. 1994) .......................................................................38

*N.Y. State Corr. Officers & Police Benevolent Ass'n v. State*,
  94 N.Y.2d 321, 704 N.Y.S.2d 910, 726 N.E.2d 462 (1999) .................................41

*O'Brien v. Syracuse*,
  54 N.Y.2d 353, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981) ..............................38

*Oxford Health Plans LLC v. Sutter*,
  569 U.S. 564, 133 S. Ct. 2064 (2013) .........................................................22

*Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*,
  472 F.3d 33 (2d Cir. 2006)........................................................................19

*Penrod Mgmt. Grp. v. Stewart's Mobile Concepts, Ltd.*,
  2008 U.S. Dist. LEXIS 11793 (S.D.N.Y. Feb. 16, 2008)....................................23

*Pike v. Freeman*,
  266 F.3d 78 (2d Cir. 2001).......................................................................40

*Protocom Devices, Inc. v. Figueroa*,
  173 A.D.2d 177, 569 N.Y.S.2d 80 (1st Dep't 1991) .................................... 28, 37

*Reilly v. Reid*,
  45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978) ........................... 38, 40

*Res. Grp. Int'l Ltd. v. Chishti*,
  91 F.4th 107 (2d Cir. 2024).......................................................................25

*Sawtelle v. Waddell & Reed, Inc.*,
  304 A.D.2d 103, 754 N.Y.S.2d 264 (1st Dep't 2003) ........................................46

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*,
  668 F.3d 60 (2d Cir. 2012).......................................................................20

*Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.*,
  250 N.Y. 304, 165 N.E. 456 (1929)..............................................................40

*Scribner v. Summers*,
  84 F.3d 554 (2d Cir. 1996).......................................................................19

*Silverman v. Benmor Coats, Inc.*,
  61 N.Y.2d 299, 473 N.Y.S.2d 774, 461 N.E.2d 1261 (1984) ................. 22, 34, 36

*Simmons v. Trans Express Inc.*,
  37 N.Y.3d 107, 148 N.Y.S.3d 178, 170 N.E.3d 733 (2021) .................... 37-38, 42

*Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*,
  57 F.4th 372 (2d Cir. 2023)............................................... 19, 21, 33, 46

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662, 130 S. Ct. 1758 (2010) ..................................................27

*Sweeney v. Herman Mgmt., Inc.,*
    85 A.D.2d 34, 447 N.Y.S.2d 164 (1st Dep't 1982)................................. 28, 43, 44

*Torrington Co. v. Metal Prod. Workers Union Local 1645,*
    362 F.2d 677 (2d Cir. 1966)..................................................34

*Trade & Transp., Inc. v. Nat. Petroleum Charterers, Inc.,*
    931 F.2d 191 (2d Cir. 1991)..................................................28

*Trs. of the N.Y. State Nurses Ass'n Pension Plan*
    *v. White Oak Glob. Advisors, LLC,*
    102 F.4th 572 (2d Cir. 2024)..................................................24

*United Paperworkers Int'l Union v. Misco, Inc.,*
    484 U.S. 29, 108 S. Ct. 364 (1987) ..................................................42

*Wallace v. Buttar,*
    378 F.3d 182 (2d Cir. 2004)..................................................46

*Wang v. Skype Communs. S.A.R.L.,*
    2022 U.S. Dist. LEXIS 1594 (S.D.N.Y. Jan. 3, 2022) ..................................................40

*Watts v. Swiss Bank Corp.,*
    27 N.Y.2d 270, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970) ..................................................39

*White v. White Rose Food,*
    237 F.3d 174 (2d Cir. 2001)..................................................19

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,*
    103 F.3d 9 (2d Cir. 1997)..................................................20, 21, 33

*Xiao Yang Chen v. Fischer,*
    6 N.Y.3d 94, 810 N.Y.S.2d 96, 843 N.E.2d 723 (2005) ..................................................42

*Zurich Am. Ins. Co. v. Team Tankers A.S.,*
    811 F.3d 584 (2d Cir. 2016)..................................................46

**Statutes & Other Authorities:**

9 U.S.C. § 6 ........................................................................................ 20

9 U.S.C. § 9 ..................................................................... 20, 28, 42, 47

9 U.S.C. § 10 ........................................................................ 28, 42, 47

9 U.S.C. § 10(a) ............................................................ 20, 22, 25, 40

9 U.S.C. § 10(a)(4) ................................................................... 22, 34

9 U.S.C. § 11 ................................................................ 28, 42, 45, 47

9 U.S.C. § 16(d) ................................................................................ 4

28 U.S.C. § 1291 ............................................................................... 4

28 U.S.C. § 1332 ............................................................................... 4

28 U.S.C. § 1332(a) .......................................................................... 4

28 U.S.C. § 1441 ............................................................................ 3, 4

CPLR § 409 ..................................................................................... 20

CPLR § 7502 ................................................................................... 20

CPLR § 7502(a) ............................................................................... 28

CPLR § 7509 ........................................................................... 28, 42

CPLR § 7510 ....................................................................... 20, 28, 42

CPLR § 7511 ....................................................................... 28, 42, 45, 47

CPLR § 7511(b) ....................................................................... 21, 25

CPLR § 7511(b)(1) ..................................................................... 20, 40

CPLR Article 75 ...................................................................... 14, 34

Local Civil Rule 8.1 .......................................................................... 4

## INTRODUCTION

Appellant–Petitioner Flintlock Construction Services, LLC ("FCS") respectfully submits this Brief in support of its Appeal from a final judgment entered on February 29, 2024 pursuant to the Opinion and Order ("Decision")(SPA-1) by the United States District Court for the Southern District of New York (herein "District Court"), which erroneously denied FCS's petition to vacate or modify the arbitration award (the "Award")(A-1008), issued by a panel of three arbitrators (the "Panel") on November 16, 2022, in favor of the Appellees-Respondents Arch Specialty Insurance Company ("Arch") and Catlin Specialty Insurance Company ("Catlin") (collectively the "Insurers") in an arbitration before the American Arbitration Association ("AAA")(the "Arbitration") and, erroneously granted Insurers cross-petition to confirm the Award.

## PRELIMINARY STATEMENT

This case reflects the difficult juxtaposition of the extreme deference owed to a binding arbitrational award and that owed to a binding contractual agreement. Here the District Court erred by failing to acknowledge both. Specifically, the District Court gave no deference to the liability determinations by an arbitrator in a prior separate arbitration, in an interim award (the "Interim Award") (A-1028) and, in the latter gave no deference to the explicit and unambiguous contractual provisions between FCS and Insurers in their settlement agreement (the "Settlement

Agreement") (A-1017) regarding the binding effect of the Interim Award. Instead, the District Court upheld the Panel's explicit modification of, not interpretation of the Interim Award.

The essence of this case arises from a contractual dispute between FCS and the Insurers over the proper allocation of proceeds from the Interim Award settlement pursuant to a "waterfall provision" within the parties Settlement Agreement. In rendering it's Decision, the court ignores that the Panel had no power or authority to arbitrate or make any determination with respect to the Interim Award in the first instance and, in doing so the District Court erroneously conflated a legal determination into a factual one.

The Panel was however, as the District Court correctly notes, tasked with interpreting the Settlement Agreement between FCS and the Insurers. It did not. Instead, as demonstrated by the explicit language of the Award and, transcript from oral argument, the Panel ignored – over FCS's repeated objections[1] – that it could ascertain whether the retainage[2] and damages award to FCS's subcontractor, BMNY Contracting Inc. ("BMNY") was correctly awarded in the Interim Award to determine if those proceeds were within the purview of the waterfall provision in the

---

[1] *see* A-1354; A-1361; A-1368, A-1373-1376; A-1390

[2] Retainage is the sum withheld from construction requisitions as a cushion for punch list work, here 7.5%, until final contract completion.

2

Settlement Agreement. The Panel then issued an Award that partially vacated the Interim Award by rewriting pertinent portions of written settlement agreements in the prior arbitration that the Insurers agreed to be bound to, and contrary to both New York and Federal law.

The District Court erroneously ratified the Panel's actions and Award with a myriad of strained interpretations and justifications, in essence, by maintaining that the Panel's actions and Award was a "mere interpretation" of the Settlement Agreement and, further justifying the same under the barely colorable standard because the Panel had indicated that its "reasoning flows from the 'plain and unambiguous meaning of the [Settlement Agreement]'". (SPA-7). The Interim Award is clear, and the Panel was bound to its holdings as the parties stipulated that the "Recovery Action" referenced in the Settlement Agreement was covered by said Award. The Panel's Award and actions manifestly reflect the Panel exceeded its authority, rendered an award that was totally irrational and violative of public policy which necessitated *vacatur* of the Award. The Decision should be reversed.

## JURISDICTIONAL STATEMENT

On February 8, 2023, pursuant to Article 75 of the New York Civil Practice and Rules ("CPLR") FCS moved in New York Supreme Court, County of New York, Commercial Part to vacate the Award issued and served by the Panel on November 16, 2022. (A-12). On February 28, 2023, pursuant to 28 U.S.C. §1441 *et. seq*. and

Local Civil Rule 8.1, the Insurers filed a Notice of Removal of the state court proceeding with the Clerk of the United States District Court for the Southern District of New York on the basis that the District Court had original jurisdiction pursuant to 28 U.S.C. §1332. (A-8.)

Accordingly, the District Court had subject matter jurisdiction based on original jurisdiction by virtue of 28 U.S.C. §1332(a), in that there was complete diversity of citizenship[3] and, the amount in controversy exceeded $75,000.00 and the proceeding was one that could be removed pursuant to 28 U.S.C. §1441. This Court has jurisdiction of this appeal pursuant to 28 U.S.C. §1291 and 9 U.S.C. §16(d).[4]

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did the District Court err by failing to delineate the correct standard of review pursuant to the Settlement Agreement between FCS and the Insurers which delineated that the arbitration and its enforcement are subject to New York law?

2.      Did the District Court err in denying FCS's petition to vacate the Award by finding that the Panel did not exceed its power or authority based on the Settlement Agreement's arbitration provision and submissions which conferred no

---

[3] The members of FCS are, as admitted, citizens of New York. (A-1321).

[4] FCS maintains that although the court made no determination as to the applicable law but otherwise granted the Insurers cross-motion to confirm, it did so pursuant to the FAA as asserted by the Insurers. FCS avers that the court's Decision to not make a determination as to what law applies, is erroneous and also necessitates reversal (*infra* Point I).

4

power on the Panel to make any determinations with respect to the Interim Award or any authority to rewrite settlement agreements to which the Insurers were not a party?

3.    Did the District Court err in denying FCS's petition to vacate the Award by finding that the Panel did not exceed its powers or authority by failing to acknowledge the preclusive effect of a prior binding arbitrational award pursuant to the doctrine of *res judicata*?

4.    Did the District Court err in denying FCS's petition to vacate the Award by finding that the Award does not violate the public policy even though it violates the CPLR and FAA by partially vacating a prior binding arbitrational award and violates the doctrine of *res judicata*, which are matters of public policy?

5.    Did the District Court err in in denying FCS's petition to vacate the Award by finding that the Award is not irrational and should not be modified even after the Insurers acknowledged that awarding BMNY's "retainage" to the Insurers would constitute double recovery and, the Panel was repeatedly informed it had no power or authority over the determinations made in the Interim Award?

## STATEMENT OF THE CASE

### A.    NATURE OF THE ACTION

The arbitration decision arises from a contractual dispute between FCS and the Insurers regarding the proper allocation of proceeds from the "Recovery Action,"

a separate arbitration against third parties and the "waterfall provision" sharing of any recovery from such action. FCS is a general contractor and the named insured under a Subcontractor Default Insurance Policy (the "SDI Policy") purchased from the Insurers which afforded coverage for the "defaults" of FCS's subcontractors on the construction project known as the "Virgin Hotel" in Manhattan (the "Project"). (A-983; A-1072). On or about March 30, 2018, FCS filed a claim under the SDI Policy due to the default of its subcontractor BMNY Contracting Corp. ("BMNY") in connection with BMNY's defective supply and/or installation of concrete on the Project.

After the claim was made, disputes arose between FCS and the Insurers regarding several coverage and payment issues under the SDI Policy and FCS. On May 7, 2018, filed a Demand for Arbitration against the Insurers with the American Arbitration Association ("AAA"). ("AAA-1"). (A-983. ¶¶11,12). Two days later, on May 9, 2018, FCS commenced an action in New York Supreme Court, County of New York, Index No. 652279/2018, seeking damages based on defective concrete provided to the Project against BMNY, various insurers of BMNY, and BMNY's suppliers of defective concrete: U.S Concrete, Inc., ("U.S Concrete"), Ferrara Bros., LLC, ("Ferrara"), USC-NYCON, LLC, ("NYCON"), USC-Jenna LLC, ("Jenna") and USC-Kings, LLC., ("Kings"). (the "Recovery Action"). (*id*. ¶13)

On July 22, 2018, FCS and the Insurers resolved their disputes, reached a settlement in the amount of $9,200,000.00 and entered into the Settlement Agreement. (*id*. ¶14; A-1017). As part of the Settlement Agreement, the Insurers contractually subrogated its subrogation rights to FCS and FCS was required, at its sole cost and expense, to pursue third parties in the "Recovery Action". (A-984. ¶¶15,16; A-1017). The Settlement Agreement also delineated the allocation of the sharing of "[a]ny recoveries and damages obtained by [FCS] in connection with the Recovery [A]ction" with the Insurers pursuant to the "Waterfall Provision" delineated therein. (*id*. ¶17; A-1017). The "Waterfall Provision" effectively computes to approximately a 55%–45% split in favor of FCS. (*id*. ¶18).

On October 5, 2018, during the pendency of the Recovery Action, NYCON and Ferrara (the "Concrete Companies") filed a Demand for Arbitration with AAA against FCS and BMNY, alleging causes of action for *inter alia* breach of contract, and wrongful termination ("AAA-2"). (*id*. ¶19). On July 18, 2019, the Recovery Action parties agreed to withdraw the action commenced by FCS in Supreme Court, and other related actions, pending a determination of the Claims related to the concrete in AAA-2. (*id*. ¶20). On July 19, 2019, FCS filed a Demand for Arbitration with AAA against Kings ("AAA-3") for claims unrelated to the Recovery Action and the action was also stayed. (A-985. ¶21). It is undisputed that FCS and the Insurers agreed that AAA-2, the arbitration between FCS, BMNY and the Concrete

Companies in which the issue of the defective concrete would be resolved, constituted the Recovery Action referenced in the Settlement Agreement. (*id*. ¶22).

The Recovery Action arbitration was, as required, pursued by FCS and proceeded before one arbitrator (the "Arbitrator"). Fifteen (15) days of hearings[5] were held, thousands of exhibits submitted, and several witnesses and experts testified. (A-985-986. ¶27). Prior to the proceedings the parties in the Recovery Action agreed to bifurcate the arbitration with the issue of liability to be determined first and damages second. (A-985. ¶¶23,24). It is also important to note that due to issues of contractual privity and financial constraints of BMNY to pay for counsel in the arbitration, on October 5, 2020, BMNY assigned its claims against the Concrete Companies to FCS. (*id*. ¶25). In return for the assignment, FCS paid for BMNY's attorneys and entered into an assignment and back charge agreement (the "ABCA"). (*id*. ¶26; A-1194)

On August 9, 2021, the Arbitrator issued his Interim Award as to liability in the Recovery Action. (A-1027). The Interim Award decisively awarded liability in favor of FCS and BMNY against the Concrete Companies. However, FCS did not prevail in its cause of action against BMNY. (A-986. ¶29). In fact, BMNY was held to have not defaulted under its subcontract with FCS, and the Arbitrator awarded

---

[5] Hearings were held on October 19, 20, 21, 22, 26, 27, 28, and 30, 2020, November 16, 17, 18, and 19, 2020 and December 2, 3, and 4, 2020. (A-1027).

8

**BMNY damages against FCS** for BMNY's contract retainage monies[6]. The Interim Award was clear and unambiguous and held as follows:

(1) FCS's claims for damages against the Concrete Companies – **Granted**;

(2) BMNY's claims for damages against the Concrete Companies – **Granted**;

(3) FCS's claims for damages against BMNY – **Dismissed** and BMNY **Granted** recovery of damages against FCS for retainage;

(4) Concrete Companies' claims for damages against FCS – **Dismissed**;

(5) Concrete Companies' claims for damages against BMNY – **Dismissed** (A-986. ¶31; A-1028).

Subsequently, the Concrete Companies entered into settlement negotiations with FCS and BMNY for the damages amount for AAA-2, FCS and Kings entered into settlement negotiations for AAA-3, and FCS and BMNY entered into negotiations to settle the retainage and other reserved claims. (A-986. ¶32). In March 2022, the Concrete Companies, Kings, BMNY and FCS entered into a global Confidential Settlement Agreement (the "CSA") whereby the parties agreed that "Ferrara Bros., NYCON, Kings, shall pay [FCS] and BMNY combined total settlement proceeds of $8,700,000.00 ("Settlement Amount") "in full and final settlement of any and all claims, counterclaims, damages of any kind related to concrete supplied to the Projects". (A-987. ¶33; A-1042).

---

[6] Retainage is the sum withheld from construction requisitions as a cushion for punch list work, here 7.5%, until final contract completion.

9

Of the total Settlement Amount, $349,500.00 was allocated for AAA-3, or amounts unrelated to the Recovery Action arbitration (*id*. ¶34; A-1042), and the balance of $8,350,000.00[7] was allocated $7,100,000.00 to FCS and, $1,250,000.00 to BMNY. (A-987. ¶¶35-36; A-1042). The retainage damages payable to BMNY was $3,434,845.20 (A-987. ¶37; A-1042) and the final allocation of the Settlement Amount was $4,014,654.80 to FCS and $4,684,845.20 to BMNY. Accordingly, FCS maintained that the net amount recovered pursuant to the waterfall provision within the Settlement Agreement was $3,665,154.48, calculated as follows:

| Undisputed Settlement Proceeds | $8,350,500.00 | |
|---|---|---|
| | FCS | BMNY |
| Allocation of Funds | $7,100,000.00 | $1,250,000.00 |
| Retainage Damages Payable to BMNY | ($3,434,845.20) | $3,434,845.20 |
| Gross Amount | $3,665,154.48 | $4,684,845.20 |
| | | |
| Sharing of Recovery Pursuant to the Settlement Agreement | FCS | INSURERS |
| First $2,000,000.00 (50/50) | $1,000,000.00 | $1,000,000.00 |
| Next $500,000.00 to FCS | $500,000.00 | -- |
| Remainder (50/50) | $582,577.24 | $ 582,577.24 |
| Net Total | $2,082,577.24 | $1,582,577.24 |

(*id.* ¶38)

The Insurers subsequently contested the proper allocation of the recovery proceeds under the Waterfall Provision and somehow maintained, in direct

---

[7] As the Decision correctly notes, the amount had a calculation error in the amount of $500.00, which had no bearing on the court's legal analysis or conclusion.

contradiction of the explicit holdings in the Interim Award, that BMNY's counterclaim recovery of $1,250,000.00 against the concrete companies and retainage award of $3,434,845.20 against FCS were to be included in "[a]ny recoveries and damages obtained by [FCS] in connection with the Recovery [A]ction" and, therefore FCS's "share" of the recovery was $8,125,500.00. (A-988. ¶¶41, 42). Pursuant to the Settlement Agreement, on April 18, 2022, FCS submitted a Demand for Arbitration and Statement of Claim, with AAA for a declaratory judgment seeking to confirm FCS's calculation of monies due the Insurers. (*id.* ¶44).

FCS then authorized the disbursement of $1,582,827.40 to the Insurers, with the balance of $2,342,422.60 placed in escrow pending a resolution of the dispute. (A-989. ¶45). Shortly thereafter, AAA appointed the Panel was mutually selected by the parties. In the Arbitration, the Insurers sought recission of the Settlement Agreement based on fraud in the inducement and judgment declaring that all $9,200,000.00 be paid to the Insurers, or alternatively that the Panel determine that the amount of recovery is $2,342,422.60 based upon the Insurers' argument that the parties intended the amounts apportioned to BMNY to be included as recoveries and FCS could not offset those apportionments.[8] (A-989. ¶46). The parties submitted cross-motions for summary judgment, and oral arguments were held on October 10,

---

[8] The Insurers subsequently withdrew their request for recission as relief.

2022.[9] (A-990. ¶53).

On November 16, 2022, the Panel issued its Award (the "Award"). (A-1007). The Award granted the Insurers' Motion for Summary Judgment and directed FCS to pay the Insurers the sum of $2,229,923.60.[10] *id*. The Panel's Award cited the Arbitrator's determinations in the Interim Award issued for AAA-2 upon which the Panel would determine the "waterfall provision" and stated:

> III (3). The cross-claims of FCS against BMNY were dismissed as BMNY was found not responsible for the defective concrete work and **BMNY was entitled to payment of the retainage.**
>
> (4). BMNY's counterclaims against [the Concrete Companies] were granted and BMNY was entitled to damages for the cost to remove and repour concrete and to **indemnification/contribution from the [the Concrete Companies] for all amounts BMNY might be obligated to pay in settlement of an arbitration award**…
> (A-991. ¶59). (emphasis added).

Despite recognizing the holdings of the Interim Award, the Panel then inexplicably ignored the determinations contained therein, the effect of which constituted vacating the same. Under the heading "Reasons for the Award", with respect to the retainage, the Panel held:

---

[9] The oral arguments were transcribed, and a full certified transcription was provided to the District Court for review and, by stipulation of the parties So Ordered, a copy of the certified transcript was docketed. (A-1349-1441).

[10] The amount is less than the original amount demanded by the Insurers, as a stipulation was entered during the Arbitration for the amount paid to BMNY to be credited as an offset.

VI(i)…[t]hough the retainage amount is referenced in the CSA, and the prior arbitrator found BMNY entitled to receive it, it was due from FCS not the [Concrete Companies]. **FCS mistakenly deems the retainage amount as having been awarded to BMNY** and seeks to use that amount as an offset to damages allegedly caused FCS by BMNY." (A-992. ¶61). (emphasis added).

However, the Interim Award incontrovertibly states "…BMNY is entitled to payment of its retainage." (A-1039). Somehow, the Panel's Award completely rejected and expressly vacated the determination made in the Interim Award, to which FCS and the Insurers agreed would be source of any recovery to be allocated. Defying logic and the express holding in the Interim Award finding FCS liable to BMNY, the Panel deemed such funds to be a "recovery" to FCS and that the Insurers were entitled to half.

Further, in its second rationale for the Award, the Panel stated:

VI (ii)…There can be no question that the amount paid into escrow by the [the Concrete Companies], to settle the Recovery Action, was paid to cover damages of any kind related to the defective concrete which they had supplied to the Project. These are the same damages for which FCS was paid by the Insurers…. (A-992. ¶67).

While the statement is correct, it ignores that BMNY was not only entitled to recover damages from that sum but was also entitled to recover its retainage from FCS. In other words, FCS lost its breach of contract claim against BMNY. The Panel again ignored the determinations of the Interim Award and rewrote the terms of the CSA and BMNY-SA in rejecting the amount apportioned for BMNY's

Counterclaim. (A-993. ¶68). Succinctly stated, while the Settlement Agreement designated a 55%/45% sharing of any proceeds in favor of FCS, the Panel awarded the Insurers $2,229,923.80 more than they were entitled, resulting in FCS netting only $877,400.80 from the proceeds of $8,350,500.00, only 10.5% of the recovery, while the Insurers recovered almost five (5) times as much, or $3,812,750.00. (*id*. ¶69).

### B.    RELEVANT PROCEDURAL HISTORY

It is undisputed that the Settlement Agreement delineates that it "shall be governed by the laws of the State of New York" and, the arbitration provision contained within the same states that "[a]ny dispute relating in any manner to this Settlement Agreement shall be heard in arbitration following the arbitration provision of the SDI Policy". (A-1020). In turn, the SDI Policy states, "[t]he arbitration shall be governed by the laws of the State of New York (without giving regard to conflicts of law provisions thereof)". (A-1081-1082).

Ergo, on February 8, 2023, pursuant to Article 75 of the New York Civil Practice Laws and Rules ("CPLR") FCS moved to vacate the Award in New York Supreme Court, County of New York, Commercial Part, on grounds that the Panel had exceeded its authority by partially vacating the Interim Award and by rewriting settlement agreements, both clearly in excess of its powers. FCS also argued that the Panel had rendered both an irrational award and an award violative of public policy

based on the same. (A-8).

On February 28, 2023, the Insurers filed a Notice of Removal with the Clerk of the United States District Court for the Southern District of New York, and the case was subsequently assigned to the Honorable Lorna G. Schofield U.S.D.J. (*id*). By letter motion and stipulation of the Parties, So-Ordered (A-712-717), on March 27, 2023, FCS filed an amended petition, supporting papers and amended memorandum of law in support of its motion to vacate the Award. On April 13, 2023, the Insurers cross-moved to confirm the Award and opposed FCS's Motion to Vacate. (A-1249-1299).

### C. THE RESULTS BELOW

On February 29, 2024, the Honorable Lorna G. Schofield, U.S.D.J, issued her Opinion and Order ("Decision"). (SPA-1) *Flintlock Constr. Servs., LLC v. Arch Specialty Ins. Co.,* 2024 U.S. Dist. LEXIS 35261 (S.D.N.Y. Feb. 29, 2024). The District Court, in error, denied FCS's petition to vacate the Award and granted the Insurers cross-motion to confirm. Akin to the Panel's determinations, the District Court acknowledged that the arbitration for the Interim Award was expressly bifurcated so that liability and damages would be determined separately and found that the Arbitrator awarded BMNY damages against Petitioner for BMNY's retainage. (*id*).

Nonetheless, the District Court ruled that the Panel did not exceed the scope of its authority because the Panel determined what was submitted by the Petitioner, which was "the proper allocation of the recovery proceeds under the Settlement Agreement". (SPA-7). The District Court made no determination as to whether the CPLR or FAA controlled but maintained that under either standard vacatur of the Award was unwarranted. *id*. The District Court also held that because the Panel had "merely interpreted" what "recoveries or damages" were included in the Settlement Agreement between FCS and the Insurers the Award neither partially vacated the Interim Award nor rewrote any of the settlement agreements and the Award satisfied the barely colorable standard because the Panel states its reasoning was based on the "plain and unambiguous meaning of the agreement". *id*.

Based on the foregoing the District Court determined the Award should not be vacated as it was not in violation of public policy, was not irrational and did not fail to give preclusive effect to the Interim Award. (SPA-8-9). The District Court did not directly address whether the Award was in manifest disregard of law as it determined that it was otherwise barely colorable. On March 27, 2023, Petitioner noted its appeal of the District Court's Decision to this Court. (A-1348).

## SUMMARY OF THE ARGUMENTS

Arbitration is a feature of contract law from which the power and scope of the arbitrators authority is derived from. The District Court glosses over the Settlement

16

Agreement's arbitration provision and submissions of the party that never conferred authority on the Panel to arbitrate the holdings of the Interim Award. In manifestation of the same, the District Court within the threshold argument as to what substantive law applies – chosen by the parties – erroneously makes no determination, when the parties unambiguously chose New York law to apply to both the agreement and its enforcement.

FCS maintains that the Panel's Award expressly vacates the holding of the Interim Award that awarded BMNY it's retainage against FCS and damages against the concrete companies and, also rewrites pertinent portions of written settlement agreements made in the prior arbitration. The District Court holds the Panel's Awards only reflects an interpretation of the Settlement Agreement and, the Interim Award was only a determination of liability so no vacatur or modification occurred. (SPA-1). The Settlement Agreement expressly includes the liability determinations of the Interim Award and, without liability determinations there are no damages. (A-1017).

The Panel's Award indeed reflects that it expressly modified and partially vacated the Interim Award and, consequently rewrote the CSA and the BMNY-SA when it also had no authority to do so. The District Court in essence gives no weight to the transcript of oral argument, as if the Panel only "discussed" the Interim Award. (SPA-8). The transcript from oral argument evidences the Panel did in fact arbitrate the determinations made by the Arbitrator and his Interim Award, over FCS's

17

repeated objections, that the Interim Award was not arbitrable. Thus, the District Court erred in its determination that FCS did not demonstrate by clear and convincing evidence that its rights were prejudiced by the Panel's repeated act of doing so.

In addition, the Panel exceeded its powers by failing to acknowledge the deference the Interim Award was owed pursuant to the CPLR, FAA and binding caselaw and, therefore, the Panel also violated the doctrine of *res judicata*. Accordingly, the District Court erred in its determination that the Award should not be vacated against public policy, as the doctrine of *res judicata* and the deference owed to a binding Interim Award under statutory law are matters of public policy.

Also, the Panel exceeded its enumerated and jurisdictional by effectively awarding BMNY's retainage to the Insurers, even after the Insurers acknowledged during oral argument that the retainage award to BMNY, if awarded to the Insurers, would constitute double recovery. While the FAA does not warrant vacatur under irrationality, the District Court ignored FCS's argument as to whether modification was warranted under the doctrine that precludes double recovery under the FAA. While FCS maintains the CPLR applies, even if the FAA did apply, FCS demonstrated by clear and convincing evidence that the Award and Panel manifestly disregarded the binding arbitration law, and the doctrines of res judicata, and double recovery.

18

## STANDARD OF REVIEW

This Court, on appeal from an order of the district court confirming or vacating an arbitration award, reviews questions of law *de novo* and findings of fact for clear error. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,* 729 F.3d 99 (2d Cir. 2013); *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.,* 57 F.4th 372 (2d Cir. 2023). "A finding of fact is 'clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Fisher v. Aetna Life Ins. Co.,* 32 F.4th 124, 136 (2d Cir. 2022) (*quoting Anderson v. Bessemer City*, 470 U.S. 564, 105 S. Ct. 1504 (1985)).

"This Court reviews a district court's interpretation of a contract de novo" (*Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.,* 472 F.3d 33, 41 (2d Cir. 2006) *citing Lee v. BSB Greenwich Mortg. Ltd. P'ship,* 267 F.3d 172 (2d Cir. 2001)) and "[m]ixed questions of law and fact are likewise reviewed *de novo*." *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir. 2001) (*citing Scribner v. Summers*, 84 F.3d 554 (2d Cir. 1996)); *see Gaia House Mezz LLC v. State St. Bank & Tr. Co., 720* F.3d 84 (2d Cir. 2013). To be clear, to the extent this Court deems this Appeal as one that raises a mixed question of law and fact, FCS has not found any caselaw in this Circuit addressing what the appropriate standard of review for mixed questions of law and fact is "in the context of petitions to vacate arbitration

19

awards" excepting[11] *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.,* 668 F.3d 60, 71 n.16 (2d Cir. 2012). *Id.* (raising the issue without a determination).

Review of an arbitration award is governed by the applicable provisions of Article 75 of the New York Civil Practice and Rules ("CPLR") or the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 10(a); CPLR § 7511(b)(1). Under either statutory framework, an application to confirm or vacate an arbitration award is summary proceeding. *see* CPLR §7502; CPLR §409; *Matter of People of the State of N.Y. v. N. Leasing Sys., Inc.,*193 A.D.3d 67, 142 N.Y.S.3d 36 (1st Dept. 2021); 9 U.S.C.S. § 6; *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9 (2d Cir. 1997). And "[u]nder both statutes, the court must confirm an award unless one of the statutory grounds for vacatur or modification is satisfied." *See* 9 U.S.C. § 9; CPLR § 7510". *Flintlock Constr. Servs., LLC v. Arch Specialty Ins. Co.,* 2024 U.S. Dist. LEXIS 35261, (S.D.N.Y. Feb. 29, 2024).

Also, in both instances review of an arbitration award is extremely limited and the burden of proof necessary to avoid confirmation is very high. *Matter of Jackson*

---

[11]This Court has however applied the standard in the context of motions to dismiss, stay or compel arbitration that the determination of whether the parties "have contractually bound themselves to arbitrate disputes - a determination involving interpretation of state law - is a legal conclusion subject to our *de novo* review,…but that the findings upon which that conclusion is based are factual and thus may not be overturned unless clearly erroneous." *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.,* 189 F.3d 289, 295 (2d Cir. 1999); *see Denney v. BDO Seidman, L.L.P.,* 412 F.3d 58 (2d Cir. 2005).

*v. Main St. Am. Grp.,* 210 A.D.3d 501, 176 N.Y.S.3d 487 (1st Dept. 2022); *Denson v. Donald J. Trump for President, Inc.,* 180 A.D.3d 446, 116 N.Y.S.3d 267 (1st Dept. 2020); *Standard Microsystems Corp.,* 103 F.3d 9; *YLL Irrevocable Tr.,* 729 F.3d 99. The "arbitration award must be upheld when the arbitrator offers even a barely colorable justification for the outcome reached." *Matter of Rose Castle Redevelopment II, LLC v. Franklin Realty Corp.,* 184 A.D.3d 230, 234, 126 N.Y.S.3d 2, 5 (1st Dept. 2020); *Smarter Tools Inc.* 57 F.4th 372 (2d Cir. 2023).

Pursuant to CPLR §7511(b) the courts shall vacate an arbitration award if the moving party establishes by clear and convincing evidence that its rights were prejudiced by: (1) corruption, fraud or misconduct in procuring the award; (2) partiality of the arbitrator; (3) the arbitrator exceeds or imperfectly executes his or her power; or (4) the arbitrator fails to follow the procedure of this article. *see* CPLR §7511(b); *see Intrepid Invs., LLC v. Selling Source, LLC,* 159 A.D.3d 508, 73 N.Y.S.3d 531 (1st Dept. 2018); *Matter of 936 Second Ave. L.P. v. Wilson Evans 50th LLC,* 171 A.D.3d 499, 96 N.Y.S.3d 527 (1st Dept. 2019); *Matter of Verille v. Jeanette*, 163 A.D.3d 830, 81 N.Y.S.3d 479 (2nd Dept. 2018). It is a well-established axiom that "an arbitrator exceeds his or her powers by rendering an award that violates a strong public policy, is totally irrational, or exceeds a specifically enumerated limitation on the arbitrator's power". *Am. Int'l Specialty Lines Ins. Co. v. Allied Capital Corp.,* 35 N.Y.3d 64, 125 N.Y.S.3d 340, 149 N.E.3d 33 (2020);

*Silverman v. Benmor Coats, Inc.,* 61 N.Y.2d 299, 473 N.Y.S.2d 774, 461 N.E.2d 1261 (1984).

Akin to the CPLR, the statutory grounds for vacatur are nearly identical under the FAA and include *inter alia* corruption, fraud, undue means, misconduct and where the arbitrators exceed their powers. *see* 9 U.S.C. §§10(a); *Leeward Constr. Co. v. Am. Univ. of Antigua - Coll. of Med.,* 826 F.3d 634 (2d Cir. 2016); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 128 S. Ct. 1396 n.7. (2008). "[A]nalysis under Section 10(a)(4) therefore focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 161 (2d Cir. 2021) (internal quotation marks and citations omitted).

Only if an arbitrator "'act[s] outside the scope of his contractually delegated authority'—issuing an award that 'simply reflect[s] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract'—may a court overturn his determination." *Mongolia*, 11 F.4th 144, 161 (*quoting Oxford Health Plans LLC v. Sutter,* 569 U.S. 564, 133 S. Ct. 2064 (2013)). The petitioner "'bears the heavy burden of showing that the award falls under within a very narrow set of circumstances delineated by statute and case law' that warrant vacatur." *Leeward Constr. Co.* 826 F.3d 638 (*quoting Duferco Int'l Steel Trading v. T. Klaveness*

*Shipping A/S,* 333 F.3d 383 (2d Cir. 2003)).

Under the Settlement Agreement the Panel was bound to the determinations in the "Recovery Action" Interim Award. Instead, they effectively relitigated the Recovery Action the result of which modified or vacated the Interim Award.

## **ARGUMENT**

## I. **THE DISTRICT COURT ERRED BY FAILING TO GIVE EFFECT TO THE PARTIES CHOICE-OF-LAW PROVISION IN BOTH THE SETTLEMENT AGREEMENT AND SDI POLICY**

The District Court's failure to make a determination that the CPLR is the appropriate standard of review applicable to the Petition evidences its failure to grasp the scope of the Panel's authority. "Parties are generally free to structure their agreements as they see fit" (*Barbier v. Shearson Lehman Hutton Inc.,* 948 F.2d 117 (2d Cir. 1991)) and, free to choose the substantive law that will apply to the agreement and govern arbitrational proceedings. *see Mastrobuono v. Shearson Lehman Hutton,* 514 U.S. 52, 115 S. Ct. 1212 (1995); *see also Bechtel Do Brasil Construções Ltda. v. UEG AraucÁria Ltda.,* 638 F.3d 150 (2d Cir. 2011). New York arbitrational law will apply in proceedings where the choice of law provisions "states that New York law shall govern both the agreement and its enforcement." *Penrod Mgmt. Grp. v. Stewart's Mobile Concepts, Ltd.,* 2008 U.S. Dist. LEXIS 11793, (S.D.N.Y. Feb. 16, 2008) (*quoting Diamond Waterproofing Sys. v. 55 Liberty Owners Corp.,* 4 N.Y.3d 247, 793 N.Y.S.2d 831, 826 N.E.2d 802 (2005)).

Stated differently, whether the CPLR or the FAA applies in a subsequent petition to vacate or confirm rests on the substantive law chosen to govern the arbitration proceedings. *see e.g., Harper Ins. Ltd. v. Century Indem. Co.,* 819 F. Supp. 2d 270 (S.D.N.Y. 2011) (declining to address the threshold question of what law should ultimately apply but determining that the CPLR would most likely apply as it was chosen for enforcement); *Honeywell, Inc. v. Firequench, Inc.,* 96 Civ. 0694 (DLC)(AJP), 1997 U.S. Dist. LEXIS 21452 (S.D.N.Y. Aug. 15, 1997) (applying the CPLR as the parties agreed New York state law would apply).

"[*Badgerow v. Walters*, 596 U.S. 1, 142 S. Ct. 1310 (2022)], instructs that subject matter jurisdiction over a petition to confirm an award turns on the law governing the contractual rights created by the arbitration agreement, rather than the laws asserted in the underlying claims or the non-existent 'freestanding' rights created solely by the award." *Trs. of the N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 596 (2d Cir. 2024). Therefore, "[b]ecause contracts are 'typically' and 'generally' creatures of state law, *Badgerow*, 596 U.S. at 9, 18, an action to enforce an arbitration contract through confirmation of its resulting award ordinarily does not arise under federal law." *Id*.

The court incorrectly maintains that there is "little practical difference between the standards applied by the CPLR and the FAA to the question of whether an arbitral award should be vacated" (SPA-7), by first ignoring Petitioner's analysis

evidencing the divergence in application and, second by foregoing making a determination on what the applicable law is on grounds that the petition to vacate fails under either the CPLR or FAA and subsequently confirming the Award under the FAA.[12] The technical difference the court simply glosses over is that an award under the CPLR "**shall be vacated**", "if the court finds that the rights of that were prejudiced" while the courts under the FAA "**may make an order**" vacating an award. *see* CPLR §7511(b); 9 U.S.C.S. §10(a).

It is undisputed that the Settlement Agreement states that it "shall be governed by the laws of the State of New York" and the arbitration provision of the SDI Policy, states "[t]he arbitration shall be governed by the laws of the State of New York (without giving regard to conflicts of law provisions thereof)". (A-1020; A-1081-1082). Both are clear manifestations that New York law would govern both the agreement and its enforcement. Which "seems most pertinent in giving effect to the parties' intentions and all the words in the provision is a reading consistent with applying the arbitration law of New York, not one that would require imposing federal arbitration law onto the plain text." *Res. Grp. Int'l Ltd. v. Chishti,* 91 F.4th 107, 112 (2d Cir. 2024) (analyzing the choice of law in an arbitration provision in the context of a motion to enjoin arbitration).

---

[12] *See supra* footnote 4

25

Accordingly, the Second Circuit should reverse the District Court's Decision based on the foregoing and for the reasons delineated below.

## II. THE DISTRICT COURT ERRED IN ITS DETERMINATION THAT THE PANEL DID NOT EXCEED IT'S CONTRACTUALLY DESIGNATED AUTHORITY

### A. The Panel Exceeded It's Enumerated Authority and Powers by Partially Vacating the Interim Award

The courts will set aside an award if a petitioner can demonstrate that the arbitrators exceeded their authority, *inter alia*, when they exceed their enumerated limits. *Denson v. Donald J. Trump for President, Inc.,* 180 A.D.3d 446, 116 N.Y.S.3d 267 (1st Dept. 2020). The arbitrator's authority encompasses only the specific issues presented and cannot extend to issues that are materially different or legally distinct. *see Matter of Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.,* 13 N.Y.3d 168, 889 N.Y.S.2d 886 (2009).

It includes those limitations "that can be found in the parties' arbitration clause, in a statute, or in the notice of demand to arbitrate." *Denson,* 180 A.D.3d 451; *see Matter of Council of Sch. Supervisors & Adm'rs, Local 1 v. N.Y.C. Dep't of Educ.,* 87 A.D.3d 883, 929 N.Y.S.2d 578 (1st Dept. 2011) (vacating award as arbitrator awarded jurisdictional authority to a governmental agency, that was solely vested in another governmental body); *Matter of Kowaleski (New York State Dep't of Corr. Servs.),* 16 N.Y.3d 85, 917 N.Y.S.2d 82, 942 N.E.2d 291 (2010) (vacating an award where the arbitrator failed to take into account a statutorily required defense); *Matter*

26

*of Bd. of Managers of 225 E. 57th St. Condo. v. Campaniello Real Estate*, 41 A.D.3d 163, 837 N.Y.S.2d 644 (1st Dept. 2007) (vacating award where arbitrator exceeded the authority granted and decided on a matter that was for judicial resolution).

Here, even if the FAA applies the analysis does not differ. "[A]n arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Jock v. Sterling Jewelers Inc.,* 646 F.3d 113, 122 (2d Cir. 2011); *see Katz v. Feinberg,* 290 F.3d 95 (2d Cir. 2002) (the panel exceeded its powers by rendering a decision on a previously determined valuation that, by agreement, was deemed "final and binding" and not subject to arbitration); *Fahnestock & Co. v. Waltman,* 935 F.2d 512 (2d Cir. 1991) (the arbitrators exceeded their powers as New York law prohibited awarding of punitive damages in arbitration, the parties arbitration rules did not confer the authority to award such damages and, the parties agreement was silent); *see also Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 676-77, 130 S. Ct. 1758, 1770 (2010) (the panel exceeded its powers by creating its own policy choice, "instead of identifying and applying a rule of decision derived from the FAA or either maritime or New York law"). The Courts, therefore, give great weight to the contractual limitations consenting parties place on the arbitrators scope of authority. The arbitrators are bound by that scope.

Under either standard, the Court of Appeals and the Second Circuit Court of Appeals have both held that where parties expressly agree for an arbitrator to issue an award as to liability in a bifurcated action, that partial award will be considered final, and arbitrators have no authority to reconsider the resulting partial final award. *see Am. Int'l Specialty Lines Ins. Co.* 35 N.Y.3d 64 (2020); *Trade & Transp., Inc. v. Nat. Petroleum Charterers, Inc.,* 931 F.2d 191 (2d Cir. 1991). Therefore, an arbitration "award rendered in compliance with all legal requirements is a complete, final and binding determination of a controversy which may not be disturbed, unless the statutory grounds for doing so exist (citations omitted)." *Protocom Devices, Inc. v. Figueroa,* 173 A.D.2d 177, 178, 569 N.Y.S.2d 80, 81 (1st Dept. 1991) (*quoting Matter of Springs Cotton Mills (Buster Boy Suit Co),* 275 A.D. 196, 88 N.Y.S.2d 295 (1st Dept. 1949) *aff'd.,* 300 N.Y. 586).

The exclusive statutory grounds to confirm, vacate, or modify an arbitration award in New York are pursuant to CPLR §§7509-7511, (*see Sweeney v. Herman Mgmt., Inc.,* 85 A.D.2d 34, 447 N.Y.S.2d 164 (1st Dept. 1982); *Cashman v. N.H. Merchs. Ins. Co.,* 42 A.D.2d 732, 345 N.Y.S.2d 668 (2nd Dept. 1973)), or the FAA 9 U.S.C §§9-11. *see Mattel, Inc.,* 552 U.S. 576. The application and proceeding must be in a court. N.Y. CPLR §7502(a); FAA 9 U.S.C §§9-11.

Neither the arbitration provision nor the parties' submissions authorized the Panel to determine the merits of the Interim Award. Yet in the subsequent Hearing

held on October 10, 2022[13], the Panel improperly sought to disturb the findings in the Interim Award by determining whether the Arbitrator had correctly or incorrectly awarded BMNY's retainage against FCS and damages against the concrete companies, based on the allegation that BMNY had not asserted a Crossclaim against FCS. (A-1007 ¶17; A-1354; A-1361; A-1368, A-1373-1376; A-1390). FCS repeatedly objected to the Panel's authority to arbitrate any determinations made by the Arbitrator in the Interim Award. (A-1354. at A-1374-1375; A-1391-1392).

The Panel then exceeded its powers by partially modifying and/or vacating the Interim Award, when it had no authority to do so. The Award states: "…[t]hough the retainage amount is referenced in the CSA, and the prior arbitrator found BMNY entitled to receive it, it was due from FCS not the [Concrete Companies]. **FCS mistakenly deems the retainage amount as having been awarded to BMNY…** (emphasis added) (A-1007; A-1011). The foregoing is an express revocation of the retainage award, and in excess of the authority conferred to the Panel by the parties' arbitration provision, the Settlement Agreement and the parties' submissions and, undeniably in excess of the Panel's statutory authority.

The District Court holds that the Panel did not exceed its authority or powers

---

[13] For purposes of the Appeal the certified transcription of the Oral Arguments, which included the names and/or titles of the individual arbitrators, and attorneys representing either FCS or the Insurers, are substituted here with respectively: "the Panel", "FCS", or the "Insurers".

because it did – exactly what was submitted by the Petitioner, which was to determine the "the proper allocation of the recovery proceeds under the Settlement Agreement" and because the "mere act of interpretation does not amount to a 'partial vacatur of the Interim Award'". (SPA-7). The District Court simply missed the point. The unambiguous interpretation of "any recovery or damages obtained by Flintlock in connection with the Recovery Action" does not in any logically tenable analysis include a determination of whether BMNY's retainage was correctly awarded to BMNY. Neither the arbitration provision nor the parties' submissions authorized the Panel to determine the merits of the Interim Award.

The District Court justifies the Panel's improper exercise of authority because the Interim Award "dealt not with damages or financial obligations but exclusively with the issue of liability". The Interim Award was the basis of the CSA and BMNY-SA which meticulously includes the various determinations of liability made by the Arbitrator contained therein. (A-1027). The interpretation of the Settlement Agreement between FCS and the Insurers did not confer power or authority on the Panel to partially modify or vacate the Interim Award in order to award the retainage award and concrete companies damages – awarded to BMNY – to FCS.

The District Court holding only lends support to FCS's position because the Panel and the parties were keenly aware that the "[t]he second or damage phase of the hearing was never held" (A-1009). In other words, despite its acknowledgement

30

of the holding in the Interim Award, that awarded BMNY retainage and damages against the Concrete Companies, the Panel improperly chose to reject it, despite the parties agreement they were bound by it. Similarly, the District Court's assertion that "[a]ny liabilities and obligations rendered by the Interim Award was effectively extinguished by the Global Settlement that followed" is a tacit admission that the liability determinations of the Interim Award were partially vacated and effectively rewrote the CSA and BMNY-SA. (*infra* Point II.B). Further, since the "Global Settlement" mirrored the exact liability determinations in the Interim Award, the result is still the same.

The hearing record provides further clear and convincing evidence that the Panel's Award was rendered as a deliberate and intentional partial vacatur of the Interim Award, as the Panel irrefutably determined they it had the authority to arbitrate the Interim Award:

> THE [PANEL]: But when you got to the arbitration, which is what became the successor to that litigation, and cross claim by [FCS] was asserted, BMNY did have no opportunity at that time, did it not, to assert – well, it did assert a counterclaim against Ferrara, but it did not make any cross claim against [FCS], correct?
> (A-1007. ¶17; A-1367, A-1368).

> \*     \*     \*

> THE [PANEL]: Okay. And this is what I find perplexing. The only issues before this particular arbitrator were the claims revolving around the bad concrete. **And yet he does say in his interim award that BMNY should get its**

31

**retainage, or words to that effect.** He doesn't make an award, but he makes some reference suggesting that he thinks they are entitled to their retainage. [14]

[FCS]: I think he says it. And the reason he said it is because this issue came up from the trial perspective. The parties moved to conform the pleadings to the proof. You can argue that a cause of action was asserted. But the bottom line is, respectfully, that's what the arbitrator determined. (*id*. at A-1373-1374) (emphasis supplied).[15]

Going further:

THE [PANEL]: Now how come this interim arbitrator who is hearing evidence only as to concrete issues and has basically jurisdiction only over concrete issues, has the authority or jurisdiction to say that the entire retainage, which represents amounts beyond concrete claims you tell us, belongs to the BMNY?[16]

[FCS]: Your Honor, I'm going to flip your question, if I may do so. And I'm going to do so respectfully. You are asking me to determine how an arbitrator made the determination in an arbitration. My smug answer to you would be who cares? But my professional answer to you is **we are bound by the arbitration award**. Arbitrators are not bound to follow full legal theories. The fact you are asking me for justification for the arbitrator's award, I don't know how to answer you. I can give you legal explanations until your face turns blue. What does that do

---

[14] The Arbitration absolutely made an award. The Arbitrator determined "…BMNY is not responsible for the defective concrete and is entitled to payment of its retainage". (A-1007 ¶3; A-1027 at pg. 13) Again, what could be clearer?

[15] The issue of the award of retainage to BMNY was further explained during oral argument (A-1374-1376).

[16] The retainage is in fact not "amounts beyond concrete claims". The Hearings clearly established that FCS used BMNY's retainage amounts to partially pay the costs of remediating the defective concrete and the retainage funds were intertwined with the defective concrete issues.

for anybody? **The arbitrator made a determination. We are bound by that**. (A-1375-1376) (emphasis added)

"A barely colorable justification exists so long as the arbitrators had reasoning on which they could have justifiably rested their decision." *Smarter Tools Inc.* 57 F.4th 372, 383 (2d Cir. 2023) (*quoting Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13-14 (2d Cir. 1997)). The offered justification does not satisfy the barely colorable standard if the error is one "that an average person qualified to serve as an arbitrator should have instantaneously perceived and corrected". *see id*.

The District Court finds that because the Panel's Award indicates on its face that "its reasoning flows from the 'plain and unambiguous meaning of the [Settlement Agreement]'" (SPA-8), the same is sufficient to satisfy a barely colorable justification. The Panel did not just "discuss" the Interim Award during oral argument, it sought to arbitrate the determinations of the Interim Award which manifests clear and convincing evidence that the Panel's Award was rendered as a deliberate and intentional vacatur of the Interim Award. This Second Circuit should reverse the District Court and vacate the Award.

**B.    The Panel Exceeded It's Enumerated Authority and Powers by Rewriting the Settlement Agreements Between FCS, the Concrete Companies, Kings and BMNY**

The Panel exceeded their enumerated authority by awarding the Insurers the monies allocated to BMNY's retainage award and Counterclaim by rewriting the

CSA and BMNY-SA. Enumerated limits include those limits imposed by the arbitration clause of the party's agreement. *see Silverman v. Benmor Coats, Inc.,* 61 N.Y.2d 299, 473 N.Y.S.2d 774, 461 N.E.2d 1261 (1984); *Fishman v. Roxanne Mgmt.,* 24 A.D.3d 365, 806 N.Y.S.2d 541 (1st Dept. 2005). Under Article 75 of the CPLR, absent a limitation on the arbitrator's powers contained expressly or by reference, in the arbitration clause of the contract or agreement being interpreted, arbitrators are free to rewrite or reform the agreement at issue. *see North. Babylon Teachers' Org.,* 104 A.D.2d 594, (2nd Dept. 1984); *Benmor Coats, Inc.,* 61 N.Y.2d 299; *Rose Castle Redevelopment II, LLC* 184 A.D.3d 230; *Matter of City of N.Y. v. Dist. Council 37,* 161 A.D.3d 435, 76 N.Y.S.3d 538 (1st Dept. 2018) (vacating award that exceeded the authority of the arbitrator to add or modify to the collective bargaining agreement at issue).

In contrast under the FAA 9 U.S.C §10(a)(4), an arbitrator "exceeds the scope of its authority when it modifies, rewrites, or holds contrary to clear and unambiguous contractual language. *Katz v. Feinberg,* 167 F. Supp. 2d 556, 558 (S.D.N.Y. 2001), *aff'd* 290, F.3d 95 (2d Cir. 2002). The distinction between the CPLR and FAA is that under federal arbitrational law, an arbitrator "cannot re-write a new agreement for the parties." *Collins & Aikman Floor Coverings Corp. v. Froehlich*, 736 F. Supp. 480 (S.D.N.Y. 1990) (*quoting Torrington Co. v. Metal Prod. Workers Union Local 1645*, 362 F.2d 677, 682 (2d Cir. 1966)).

The contractual provision at issue in the instant matter was a limitation of the arbitrators powers. What was submitted to the Panel was a matter of what FCS and the Insurers intended "recoveries and damages obtained by [FCS] in connection with the Recovery action" to mean within their Settlement Agreement. (A-1003. ¶11, A-1113). The CSA and BMNY-SA were provided to the Panel to assist in its determination of said interpretation, as the allocation of the liability derived from the Interim Award controlled the allocation of the damages within the agreements between FCS, BMNY, Kings, and the Concrete Companies. (A-1002. ¶¶6 & 7) The Panel based the Award not on the "interpretation" of the Settlement Agreement, or even by rewriting the pertinent sections of the Settlement Agreement (although, implicitly deleting certain other provisions), but by expressly rewriting the CSA and the BMNY SA -- which was in excess of their enumerated powers.

When analyzing the Panel's actions pursuant to the FAA or the CPLR, the Panel **re-wrote the Interim Award**, (*supra* Point I.A), effectively deleting the allocation of BMNY's retainage in the CSA (A-1002 ¶6; A-1041), and obliterating FCS's contractual setoff with BMNY as delineated under the BMNY-SA. (A-1002 ¶7; A-1056). Similarly, in awarding the Insurers the amounts allocated for the BMNY counterclaim and deeming them as part of FCS's "recoveries" the Panel explicitly stated that the amount of the counterclaim is "allocated to BMNY by the CSA…" (A-1001 ¶3, A-1011-1012) and maintains that by "[a]pplying the plain and

35

unambiguous meaning of the [Settlement] [A]greement…the Panel finds that sum remaining in escrow is part of the recoveries and damages which constitute the 'Recovery Amount'". (*id*). The sum remaining in escrow as the "Recovery Amount" was the amount delineated under the terms of the CSA after the apportionments made pursuant to ¶2(a)-(f) in the CSA. (A-1001 ¶6; A-1047-1048).

Under the CPLR, FCS maintains that its position is in accordance with *Silverman* and its progeny as the Panel did not have any enumerated authority under the arbitration provision of the Settlement Agreement to rewrite FCS's settlement agreements with Kings, BMNY and the Concrete Companies. 61 N.Y.2d 299; *see Franklin Realty Corp.,* 184 A.D.3d 230 (1st Dept. 2020). Likewise, under the FAA, the analysis and conclusion does not change. *see Katz,* 290 F.3d 95.

In either instance the court erred in its determination that the Award is sufficient to satisfy the barely colorable standard because it states, "its reasoning flows from the 'plain and unambiguous meaning of the [Settlement Agreement]'". The rewriting of contractual agreements is an insufficient justification to vitiate vacatur. The Panel effectively allowed the Insurers an appeal of the Interim Award when they had no such right under the Settlement Agreement. FCS prosecuted the Recovery Action and settled the case as fully authorized under the Settlement Agreement.

## C. The Panel Exceeded Its Powers by Failing to Acknowledge the Preclusive Effect of The Interim Award

In accordance with the CPLR, arbitrators exceed their powers by failing to give preclusive effect to the claims in a prior arbitration award based on the doctrine of *res judicata. see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin,* 766 N.Y.S.2d 1 (1st Dept. 2003); *Motor Vehicle Accident Indemnification Corp. v. Travelers Ins. Co.,* 246 A.D.2d 420, 667 N.Y.S.2d 741 (1st Dept. 1998); *Protocom Devices, Inc* 173 A.D.2d 177; *see also Matter of Falzone v. N.Y. Cent. Mut. Fire Ins. Co.,* 15 N.Y.3d 530, 914 N.Y.S.2d 67, 939 N.E.2d 1197 (2010) ("[s]ince the instant claim involves the doctrine of collateral estoppel, not res judicata, petitioner's reliance on Appellate Division decisions barring subsequent arbitrations on res judicata grounds is misplaced.").

Pursuant to New York law[17], "res judicata, or claim preclusion, bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *Matter of People v Applied Card Sys., Inc*., 11 N.Y.3d 105, 123, 894 N.E.2d 1, 863 N.Y.S.2d 615 (2008). New York takes a transactional and pragmatic approach to the rule. *Simmons v. Trans*

---

[17] FCS maintains that New York law would govern the *res judicata* effect of the Interim Award.

*Express Inc.,* 37 N.Y.3d 107, 148 N.Y.S.3d 178, 170 N.E.3d 733 (2021). [18]

Under the transactional approach "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or seeking a different remedy." *In re Josey v. Goord,* 9 N.Y.3d 386, 849 N.Y.S.2d 497, 880 N.E.2d 18 (2007) (*quoting O'Brien v. Syracuse,* 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158, 1159 (1981). Pragmatism dictates when ascertaining whether two claims arise out of the same transaction or series of transactions, "courts should analyze whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Trans Express Inc.,* 37 N.Y.3d 109 (internal quotation marks omitted); *see Reilly v. Reid,* 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978). In fact, the Insurers and FCS were "partners" for the purposes of sharing Recovery Action damages.

---

[18] Petitioner has not located any case law, pursuant to the FAA, where arbitrators exceed their powers by failing to give a prior award preclusive effect under the doctrine of res judicata or collateral estoppel. Often, parties seek a permanent stay of arbitration raising issues of arbitrability, (*see e.g., Burmah Oil Tankers, Ltd. v. Trisun Tankers, Ltd.,* 687 F. Supp. 897 (S.D.N.Y. 1988) or stay proceedings to avoid arbitration altogether. *see e.g., N. River Ins. Co. v. Allstate Ins. Co.,* 866 F. Supp. 123 (S.D.N.Y. 1994); *Credit Suisse AG v. Graham,* 533 F. Supp. 3d 122 (S.D.N.Y. 2021). It is important to note that the court in *Credit Suisse AG,* emphasized that even where a claims arbitrability is reserved to the arbitrator, a losing party can still pursue Section 10 remedies, under grounds of manifest disregard of the law. *id.*

The Panel *sua sponte* raised the validity of Interim Award awarding BMNY its retainage and failed to recognize the claim as *res judicata*. From the transactional standpoint, BMNY was awarded liability as to its retainage against FCS and FCS was the party entitled to seek vacatur of that award. Pragmatically speaking, the Insurers were not a party in the Recovery Action, they enumerated all authority with the Recovery Action to FCS. To wit, "[FCS] shall have the ultimate authority to make decisions regarding the Recovery Action, except that any decisions regarding a settlement or other resolution of the Recovery Action for a sum less than $3,000,000.00 shall require the Insurers' written consent..." (A-1002 ¶4; A-1019).

It is further irrefutable that the Insurers were in privity to FCS in the Recovery Action. "[A] person may be bound by a prior judgment to which he [or she] was not a party of record" and "includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." *Watts v. Swiss Bank Corp.,* 27 N.Y.2d 270, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970); *see also Applied Card Sys., Inc.,* 11 N.Y.3d 105. The Insurers, although not a party of record in the Recovery Action, subrogated its rights to FCS, its subrogee, such that it can be reasonably inferred that FCS and the Insurers were in privity. *see Matter of Zurich Am. Ins. v. Hereford Ins. Co.,* 173 A.D.3d 880, 104 N.Y.S.3d 130 (2nd Dept. 2019); *see also Bayshore Family Partners, L.P. v. Found. of Jewish Philanthropies*

*of the Jewish Fed'n,* 270 A.D.2d 374, 704 N.Y.S.2d 631 (2nd Dept. 2000).

The Panel, in defiance of the Settlement Agreement, the CSA, the BMNY-SA, and the finality of the Interim Award, conferred on the Insurers standing to seek vacatur of the award by first arbitrating the claim and, then expressly vacating the holding; a right that the Insurers (nor, the Panel) had from a contractual or statutory standpoint.[19] Moreover, "[a] judgment in one action is conclusive in a later one * * * when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first". *Reilly* 45 N.Y.2d 28 (*quoting Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.,* 250 N.Y. 304, 165 N.E. 456 (1929)); *see also Applied Card Sys., Inc*., 11 N.Y.3d 125.

The District Court correctly holds that under the FAA past arbitrational awards would have a binding effect in a subsequent court action. (SPA-9 *citing Pike v. Freeman,* 266 F.3d 78 (2d Cir. 2001) *accord Wang v. Skype Communs. S.A.R.L.,* 2022 U.S. Dist. LEXIS 1594 (S.D.N.Y. Jan. 3, 2022). The District Court however does not address FCS's analysis under New York law or whether a prior binding Interim Award is precluded from relitigation in a subsequent arbitration as it holds no "relitigation took place here". (SPA-8-9). FCS demonstrated that the Panel failed

---

[19] The CPLR only allows a party who has "participated" in the arbitration to seek vacatur (CPLR §7511(b)(1), while the FAA only allows a party to the arbitration to seek vacatur. 9 U.S.C.S §10(a).

to give the Interim Award the deference it is afforded under the CPLR and FAA. The Decision denying vacatur should be reversed.

## III. THE DISTRICT COURT ERRED IN IT'S DETERMINATION THAT THE AWARD DOES NOT VIOLATE PUBLIC POLICY

Enabling arbitrators to vacate arbitration awards partially or fully, in subsequent arbitrations unequivocally impedes the strong public policy in favor of the arbitration process, and the finality of the arbitration award. FCS spent over $1,000,000.00 to prosecute the Recovery Action for both their benefit and that of the Insurers and the instant Panel vacated the Interim Award. (A-1003 ¶11; A-1130). Under New York law, courts may vacate an arbitration award where the "strong and well-defined policy considerations embodied in constitutional, statutory or common law prohibit a particular matter from being decided or certain relief from being granted by an arbitrator". *N.Y. State Corr. Officers & Police Benevolent Ass'n v. State,* 94 N.Y.2d 321, 704 N.Y.S.2d 910, 726 N.E.2d 462 (1999); *see Matter of N.Y.C. Transit Auth. v. Phillips,* 162 A.D.3d 93, 75 N.Y.S.3d 133 (1st Dept. 2018); *N.Y.C. Dep't of Educ.,* 87 A.D.3d 929 (1st Dept. 2011); *Cohoes City Sch. Dist. v. Cohoes Teachers Ass'n,* 40 N.Y.2d 774, 390 N.Y.S.2d 53, 358 N.E.2d 878 (1976).

Under the FAA, review "is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, 'creates an explicit conflict with other laws and legal precedents' and thus clearly violates an identifiable public policy." *IBEW, Local 97 v. Niagara Mohawk Power Corp.,* 143 F.3d 704 (2d Cir.

41

1998) (*quoting United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S. Ct. 364 (1987)); *see Commercial Union Ins. Co. v. Lines* 378 F.3d 204 (2d Cir. 2004),

There is nothing ambiguous about the Interim Award concerning the BMNY retainage and contract recovery against the concrete companies. However, the Panel's hypotheticals on what an arbitrator may or may not have done in a subsequent damages hearing (A-1004 ¶ 17, A-1390), and thereafter incorrectly state who those funds were due from (*infra* Point IV) does not change the indisputable fact that BMNY was awarded retainage and contract damages in the prior arbitration. The Panel's retainage award to the Insurers is a vacatur of the Interim Award and in violation of both the CPLR and FAA which are the exclusive statutory grounds to confirm, vacate, or modify an arbitration award is pursuant to the CPLR §§7509-7511, or the FAA 9 U.S.C §§9-11 (*see supra* Point II.A).

Likewise, the award violates the attendant public policy concerns of the doctrine of *res judicata*. "The primary purposes of res judicata are grounded in public policy concerns and are intended to ensure finality, prevent vexatious litigation and promote judicial economy." *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100, 810 N.Y.S.2d 96, 98, 843 N.E.2d 723, 725 (2005) (citations omitted); *see Simmons* 37 N.Y.3d 107. Contrary to the District Court's holding the foregoing are public policy concerns that warranted vacatur. Simply stated, FCS and the Insurers were "partners" in the recovery action. Both agreed to be bound in the Recovery Action

42

and that agreement was disturbed by the Panel.

## IV. THE DISTRICT COURT ERRED IN IT'S DETERMINATION THAT THE AWARD IS NOT TOTALLY IRRATIONAL

The Appellate Divisions in New York have held that an award is irrational where there is no basis in the record for the award (*Matter of Spear, Leeds & Kellogg v. Bullseye Sec.,* 291 A.D.2d 255, 738 N.Y.S.2d 27 (1st Dept. 2002)), where an arbitrator creates an entirely new contract by creating nonexistent legal duties and obligations on a nonparty, and by misinterpreting and ignoring facts in the record (*Sweeney.,* 85 A.D.2d 34, (1st Dept. 1982)), or where an arbitrator's award is based on an irrational overreach of their enumerated authority. *N.Y.C. Dep't of Educ.,* 87 A.D.3d 883.

By vacating the determination made in the Interim Award awarding BMNY its retainage and reversing the $1,250,000.00 recovered by BMNY against the Concrete Companies the Panel irrationally overreached its jurisdictional authority. The Award further defies logic as the Panel had no reason to preclude the retainage and BMNY recovery on the alleged basis that it was not awarded, as FCS has no "recoveries or damages" without the Interim Award. In other words, by using the Panel's logic, the Insurers (and FCS) would be entitled to **zero** because the liability holdings in the Interim Award did not confer "recoveries and damages". The District Court adopts the same reasoning by finding that "[t]o the degree that revocation occurred, it was a function of the private agreement between [FCS] and BMNY"

(SPA-8).

Similarly, the Panel's decision to incorrectly state that the funds "...[were] due from FCS not the [Concrete Companies]" is also irrational [20]. (A-1011). The CSA and BMNY-SA clearly delineate that the retainage was always due from FCS and FCS maintained the same during the Hearing: "[t]he retainage is a claim from BMNY to [FCS]. It's not a claim against [the Concrete Companies] …**The retainage is a recovery from BMNY against [FCS].** It has nothing to do with [the Concrete Companies]." (A-1004. ¶17, A-1416) (emphasis added). Although an award cannot be vacated even if an arbitrator misconstrues or disregards the plain meaning of the agreement in question (*see Bd. of Educ. v. N. Babylon Teachers' Org.,* 104 A.D.2d 594, 479 N.Y.S.2d 536 (2nd Dept. 1984)), in this instance, the Panel is misconstruing and ignoring facts within the Interim Award, not the Settlement Agreement in question, thereby rendering the Award irrational. *see Sweeney* 85 A.D.2d at 34.

Adding further irrationality to an already irrational decision, during oral argument the Insurers admitted that the retainage was already offset by the Insurers as part of their settlement payment in the Settlement Agreement with FCS:

> THE [PANEL]: …[w]hen you guys were doing this up in the beginning and determining how much of a credit the insurance company had to be given, **one of the credits**

---

[20] As a further demonstration of the Panel's irrationality, it should be noted that by following the Panel's logic, regarding the retainage being due from FCS, if the retainage due to BMNY would have been equal to the amount of $8,350,500.00 (the total amount paid by the Concrete Companies in the CSA), then FCS would have recovered nothing and would have had to pay almost $4,000,000.00 out of its pocket to the Insurers.

**they [FCS] had to give was the retainage**, because that was the money they had in their pocket, so to speak…**So the arbitrator specifically said you have got to pay them the retainage**…

[THE INSURERS]: Of course. **Let's start with the fact that that's true**, that when we calculated the settlement payment, one of the calculations is that the remaining subcontract balance in our possession is used to offset the anticipated loss…
(A-1004 ¶17, A-1406-1407) (emphasis added)

Simply stated, the Panel, even after being informed by the Insurers that awarding the retainage to them would undeniably constitute double recovery, the Panel found it rational to award the Insurers monies which they had already taken credit for. Similarly, in awarding the Insurers the monies allocated for BMNY's Counterclaim, the Panel irrationally changed the legal obligations of BMNY, and the Concrete Companies established in the CSA and BMNY-SA.

While FCS concedes that there are no grounds for irrationality under the FAA, the courts have used the FAA to allow for modification of awards that constitute double recovery. [21] "When an arbitration award orders a party to pay damages that have already been paid or which are included elsewhere in the award, a court may modify the award." *Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv.,* 96 Civ. 6441 (PKL), 2000 U.S. Dist. LEXIS 558, (S.D.N.Y. Jan. 24,

---

[21] While FCS has not located any case law that supports the same proposition for modification of an award under the CPLR, the language for the grounds for modification of an award under CPLR §7511 is the same as it is under 9 U.S.C. §11.

2000)(*quoting Eljer Mfg., Inc. v Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir 1994), *cert denied* 512 U.S. 1205, 129 L. Ed. 2d 810 (1994); *see Melun Indus. v. Strange,* 898 F. Supp. 995 (S.D.N.Y. 1992); *Sawtelle v. Waddell & Reed, Inc.,* 304 A.D.2d 103, 754 N.Y.S.2d 264 (1st Dept. 2003). As such, the Interim Award is effectively a second payment to the Insurers for the retainage that the Insurers admitted they had taken as a credit for in the Settlement Agreement, which constitutes double recovery and, at a minimum warrant's modification of the Award.

## V.  THE DISTRICT COURT ERRED IN IT'S DETERMINATION THAT THE AWARD IS NOT IN MANIFEST DISREGARD OF THE LAW

To demonstrate manifest disregard of the law, the petitioner must establish "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co. v. Team Tankers A.S.,* 811 F.3d 584 (2d Cir. 2016) (*quoting Wallace v. Buttar,* 378 F.3d 182 (2d Cir. 2004)). Even when the inquiry is satisfied, the award "should not be enforced despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *Wallace* 378 F.3d 190; *Smarter Tools Inc.* 57 F.4th 383.

Accordingly, even if the FAA applies, the Panel's award was in manifest disregard of the law as the record demonstrates that the Panel was repeatedly told the governing principles applicable in the instant proceedings and chose to ignore it

in order to impose their own brand of economic justice. This includes its decision to ignore the Panel's jurisdictional and statutory authority (*supra* Point II.A & II.B), the doctrine of res judicata (*supra* Point II.C), the principles of double recovery (*supra* Point IV), and all without a satisfactory barely colorable justification for the outcome reached. The Panel's Award should be vacated.

## <u>CONCLUSION</u>

For the foregoing reasons and the record before this Court, Appellant–Petitioner Flintlock Construction Services, LLC., respectfully requests that this Court enter a judgment to reverse the District Court and vacate the Panel's Award pursuant to the grounds under CPLR § 7511 or, alternatively pursuant to 9 U.S.C. §§9-11 and granting such other and further relief as this Court deems just and proper.

Dated: Great Neck, New York
     July 10, 2024

**HOLLANDER LAW GROUP, PLLC**
Attorneys for Appellant–Petitioner
Flintlock Construction Services, LLC.,


By:  /s/ Larry B. Hollander
       Larry B. Hollander
       Thanbir Ahmed
      40 Cutter Mill Road, Ste. 203
      Great Neck, New York 11021
      (516) 498-1000

# CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). It contains 11,579 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using MS Word in 14 pt Times New Roman.

Dated:   July 10, 2024

# Special Appendix

i

# TABLE OF CONTENTS

**Page**

Opinion and Order of the Honorable Lorna G.
    Schofield, dated February 29, 2024 ....................... SPA-1

Judgment, dated February 29, 2024 ........................... SPA-12

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                          :
FLINTLOCK CONSTRUCTION SERVICES,    :
LLC,                                       :
                    Petitioner,   :           23 Civ. 1701 (LGS)
                                            :
           -against-           :      **OPINION AND ORDER**
                                          :
ARCH SPECIALTY INSURANCE COMPANY,   :
et al.,                                      :
                    Respondents. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       On November 16, 2022, the American Arbitration Association (the "AAA") issued an award (the "Award") against Petitioner, Flintlock Construction Services LLC, in favor of Respondents, Arch Specialty Insurance Company and Catlin Special Insurance Company.  At issue are Flintlock's Amended Petition to vacate the Award and Respondents' cross-motion to confirm the Award.  For the following reasons, Petitioner's motion to vacate is denied, and Respondents' motion to confirm is granted.  Respondents' related request for attorney's fees is denied.

## I.     BACKGROUND

       The following facts are taken from the sworn declarations of the parties' counsel and attached exhibits, including the Award.

       Petitioner, a general contractor, was insured under a Subcontractor Default Insurance Policy (the "Policy") purchased from Respondents.  In 2018, Petitioner filed a claim under the Policy in connection with the default of its subcontractor, BMNY Contracting Corp. ("BMNY"), for defective supply and/or installation of concrete on a construction project in Manhattan.  The parties disagreed over coverage and payment under the Policy.  Petitioner initiated an arbitration

proceeding against Respondents, and the parties later reached a settlement in the amount of $9.2 million (the "Settlement Agreement").

One term of the Settlement Agreement required Petitioner, at its own expense, to continue pursuing its state court action against certain parties who allegedly were responsible for the loss resulting from the BMNY default (the "Recovery Action"). Under a "waterfall provision," Petitioner and Respondents agreed that "[a]ny recoveries or damages obtained by [Petitioner] in connection with the Recovery action shall be shared among [Petitioner] and [Respondents]" according to the following formula: the first $2 million shall be split evenly between Petitioner (50%) and Respondents (25% and 25%); the next $500,000 shall go entirely to Petitioner and any remainder shall be split with half to Petitioner and half to Respondents (25% and 25%). Interpretation of this waterfall provision -- specifically the "any recoveries or damages" language -- is the subject of the Award at issue on this motion. The Settlement Agreement contains an arbitration provision which states, "Any dispute relating in any manner to this Settlement Agreement shall be heard in arbitration following the arbitration provision of the SDI Policy."

A number of proceedings followed the Settlement Agreement, initiated by various entities. Relevant to the present action, two concrete suppliers initiated an arbitration proceeding against Petitioner and BMNY, alleging breach of contract and wrongful termination, among other claims. The Recovery Action parties agreed to withdraw that action pending a determination in the arbitration. Petitioner and Respondents also agreed that the Recovery Action was effectively subsumed by this arbitration, which would determine the issue of defective concrete, and that the arbitration constituted the Recovery Action for purposes of the Settlement Agreement. The arbitration was bifurcated so that liability and damages would be

2

SPA-3

determined at different stages.  After fifteen days of hearings, the arbitrator issued a liability award in favor of Petitioner and BMNY against the concrete suppliers (the "Interim Award").  The arbitrator decided against Petitioner on its claim against BMNY, holding that BMNY did not default under its subcontract with Petitioner.  The arbitrator awarded BMNY damages against Petitioner for BMNY's contract retainage.

After liability was determined but before the arbitrator reached the damages phase, Petitioner, BMNY and the concrete suppliers entered a global settlement (the "Global Settlement") whereby the parties agreed that the concrete suppliers would pay Petitioner and BMNY $8,700,000 in "full and final settlement" of any claims related to concrete supplied to the construction project.  A portion, $349,500, was allocated to Petitioner to settle a dispute unrelated to the construction project.  The balance of $8,350,500 was allocated $7,100,000 to Petitioner and $1,250,000 to BMNY.[1]  Petitioner and BMNY also agreed that BMNY's retainage claim against Petitioner would be settled for $3,434,845.20.  Accordingly, the final allocation of the $8.7 million Global Settlement was $4,014,654.80 to Petitioner and $4,684,845.20 to BMNY.

In a separate agreement between Petitioner and BMNY, executed simultaneously with the Global Settlement, the two agreed to settle any remaining claims against each other related to the construction project.  Petitioner paid BMNY $225,000 and BMNY agreed to forfeit to Petitioner the $4,684,845.20 it had been allocated under the Global Settlement.  Considering the Global

---

[1] The Global Settlement appears to contain a calculation error, as it allocates $500 less than the $8,350,500 to be shared by Petitioner and BMNY.  $7,100,000 + $1,250,000 = $8,350,000. This Opinion defers to the parties' characterizations of the figures.  The $500 discrepancy has no bearing on the Opinion's legal analysis or conclusion.

SPA-4

Settlement and the Petitioner/BMNY settlement together, Petitioner recovered $8,125,500 related to the construction project.[2]  The present dispute arose from this figure.

An escrow attorney for Petitioner then made a distribution of $1,582,827.40 to Respondents pursuant to the waterfall provision in the Settlement Agreement.  In calculating the amount due to Respondents, the attorney excluded from the "recoveries or damages obtained by [Petitioner]" the $4,684,845.20 that had been allocated to BMNY under the Global Settlement. Respondents disputed this interpretation of the waterfall provision, arguing that their share should have been based on the $8,125,500 that Petitioner ultimately netted.  Using that figure, Respondents were entitled to an additional $2,342,423.  This amount was placed in escrow pending resolution of the dispute.

In accordance with the Settlement Agreement, Petitioner commenced a AAA arbitration against Respondents.  AAA appointed a panel of three arbitrators mutually selected by the parties (the "Panel").  The parties submitted cross-motions for summary judgment, and oral argument was held on October 10, 2022.  On November 16, 2022, the Panel issued the Award in Respondents' favor, finding that the "plain and unambiguous meaning" of the Settlement Agreement subjects the entire amount credited to Petitioner to the waterfall provision.  The award directed Petitioner to pay Respondents the $2,229,923.60 they sought.[3]

---

[2] This represents the $8.7 million total from the Global Settlement, less the $349,500 that was paid to Petitioner to settle an unrelated matter and the $225,000 Petitioner paid to BMNY in their private agreement.  $8,700,000 − $349,500 − $225,000 = $8,125,500.

[3] This figure differs slightly from the $2.34 million Respondents initially sought due to a stipulation of the parties made during arbitration.

SPA-5

## II.    STANDARD

The parties disagree about whether Article 75 of the New York Civil Practice Law and Rules ("CPLR") or the Federal Arbitration Act ("FAA") provides the relevant legal standard. Both parties contend that either body of law yields their preferred outcome, but Petitioner argues for the application of CPLR while Respondents press federal law. Ultimately, it is unnecessary to decide which law applies. For the reasons discussed below, the petition to vacate fails under either standard.

There is little practical difference between the standards applied by the CPLR and the FAA to the question of whether an arbitral award should be vacated. Under either standard, judicial review of arbitration awards is deferential, limited and narrowly circumscribed. *See Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021) (FAA); *In re Falzone (New York Cent. Mut. Fire Ins. Co.)*, 939 N.E.2d 1197, 1198-99 (N.Y. 2010) (CPLR); *cf. Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 589 n.7 (2008) ("The text of the FAA was based upon that of New York's arbitration statute.").

Both sources of law provide that an arbitral award may be vacated if: (1) the arbitrator was partial, (2) the award was procured by corruption or fraud; (3) the arbitrator was guilty of misconduct or (4) the arbitrator exceeded his or her power. *See* 9 U.S.C. § 10(a); CPLR § 7511(b)(1); *see also Magid v. Waldman*, No. 19 Civ. 11516, 2020 WL 4891218, at *3 (S.D.N.Y. Aug. 19, 2020) (comparing the two statutes). Under both statutes, the court must confirm an award unless one of the statutory grounds for vacatur or modification is satisfied. *See* 9 U.S.C. § 9; CPLR § 7510.

SPA-6

Regardless of which law applies, "courts are reluctant to disturb the decisions of arbitrators lest the value of this method of resolving controversies be undermined."[4]  *Matter of Goldfinger v. Lisker*, 500 N.E.2d 857, 859 (N.Y. 1986) (CPLR); *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) ("[A]n arbitration award should be enforced [under the FAA], despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."); *accord Magid*, 2020 WL 4891218, at *3.  Under both the FAA and CPLR, the party seeking to vacate or modify an arbitral award bears a "heavy burden . . . ."  *Verille v. Jeanette*, 163 A.D.3d 830, 830-31 (2d Dep't 2018); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) ("A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high.").

## III.   DISCUSSION

### A.  Vacatur of the Award

Petitioner's argument is that the Award should be vacated because the Panel exceeded its powers by vacating or rewriting the Interim Award or Global Settlement.  Petitioner presents this argument using several different theories -- that the Award violates public policy, is irrational, flouts *res judicata* or is in manifest disregard of the law.  But none of these prevails.  "[A]rbitrators exceed their power within the meaning of the CPLR only when they issue an award that violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power."  *Am. Int'l Specialty Lines Ins. Co. v. Allied Cap. Corp.*, 149 N.E.3d 33, 37 (N.Y. 2020).  Likewise, under the FAA, the focus of the inquiry is "whether the arbitrator[] had the power, based on the parties' submissions or the arbitration

---

[4] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

agreement, to reach a certain issue, not whether the arbitrator correctly decided that issue."

*Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 382 (2d Cir.

2023).  The Second Circuit has "consistently accorded the narrowest of readings to Section

10(a)(4)," the provision of the FAA allowing for vacatur when an arbitrator exceeds his power.

*Id.*  Vacatur was necessary under the FAA when, for example, "the arbitrators exceeded their

powers by determining the rights of a corporation not party to the arbitration . . . or awarded for

events not governed by the arbitration agreement."  *Id.*

    Under either the CPLR or FAA standards, there is no basis to conclude that the Panel

exceeded its powers.  As Petitioner acknowledges, it commenced the arbitration to determine

"the proper allocation of the recovery proceeds under the Settlement Agreement."  This is

exactly what the Panel did.  In finding for Respondents, the Panel determined that "[Petitioner]

mistakenly deems the retainage amount as having been awarded to BMNY" in the Global

Settlement.  The Panel found "neither persuasive nor consistent with the plain meaning of the

[Settlement Agreement]" Petitioner's attempt to "exclude from sharing the $1,250,000.00

allocated to BMNY" by the Global Settlement -- most of which BMNY ultimately forfeited in its

separate agreement with Petitioner.  Necessary to the Panel's application of the waterfall

provision was an interpretation of whether the funds allocated among the concrete suppliers,

Petitioner and BMNY were included in the "recoveries or damages" contemplated by the

Settlement Agreement.  But the mere act of interpretation does not amount to a "partial vacatur

of the Interim Award."  Nor does it amount to a "rewriting" of any of the settlement agreements

between Petitioner, BMNY or the concrete suppliers, as Petitioner argues.  Nothing in the Award

affects or disturbs Petitioner's rights and obligations vis-à-vis BMNY or the concrete suppliers.

And the Interim Award, Petitioner concedes, dealt not with damages or financial obligations, but

exclusively with the issue of liability.  Any liabilities or obligations rendered by the Interim

Award were effectively extinguished by the Global Settlement that followed.

Petitioner points to the transcript of the oral hearing as evidence that the Panel exceeded

its powers by discussing the Interim Award and then "partially vacating" that award by revoking

the retainage award to BMNY.  But the Panel made no such revocation.  To the degree that a

revocation occurred, it was a function of the private agreement between Petitioner and BMNY,

under which BMNY received $225,000 in exchange for relinquishing its right to what it had

been allocated under the Global Settlement.  Petitioner seems to suggest that, because the Panel

discussed the retainage holding of the Interim Award at the oral hearing, it must have based the

Award on a revision of the Interim Award and then used its analysis of the Settlement

Agreement as pretext for its decision.  This is unfounded.  The Award clearly states that its

reasoning flows from the "plain and unambiguous meaning of the agreement," and not from any

alteration to rulings or settlements ancillary to the Settlement Agreement.  This is more than

enough to satisfy the "barely colorable justification for the outcome reached by the arbitrators"

that is necessary to confirm the award.  *See Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp.

Trade Co.*, 57 F.4th 372, 378 (2d Cir. 2023); *Wien & Malkin LLP v. Helmsley-Spear, Inc.*, 846

N.E.2d 1201, 1206 (N.Y. 2006) (same, in the context of the CPLR).  That the Panel discussed the

Interim Award or subsequent settlement agreements at the hearing is insufficient to contradict

the clear and sound rationale for its conclusion that is stated on the face of the Award.

Petitioner's allegations that the Panel rendered its Award by considering issues beyond the scope

of its charge are, at most, conclusory.

Petitioner's argument that the Award should be vacated as violative of public policy is

similarly unconvincing.  Petitioner's argument to this effect is just a repackaging of its argument

that the Panel inappropriately vacated the Interim Award.  Pursuant to the CPLR, "[c]ourts will only intervene in the arbitration process in those cases in which public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator."  *City Sch. Dist. of New York v. McGraham*, 958 N.E.2d 897, 898 (N.Y. 2011).  Under the FAA, "a court's task in reviewing possible violations of public policy is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy."  *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 818-19 (2d Cir. 2022). Petitioner identifies no public policy, articulated in any statute or caselaw, that the Award violates.  As explained above, the Panel's decision did not vacate the Interim Award, expressly or otherwise.  Petitioner's attempt to rehabilitate that losing argument as an argument that the Award violates public policy fails.

Petitioner's argument that the award should be vacated or modified because it is irrational also fails.  Petitioner grounds this argument, once again, in its incorrect assessment that the Panel vacated or misconstrued the Interim Award.  The same goes for Petitioner's argument that the Panel failed to give preclusive effect to the Interim Award consistent with the doctrine of *res judicata*.  While past determinations in arbitral awards do have a "binding effect" that is not subject to relitigation, no relitigation took place here.  *See Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001); *accord Wang v. Skype Commc'ns S.A.R.L*, No. 21 Civ. 8082, 2022 WL 883773, at *1 (S.D.N.Y. Jan. 3, 2022).  The Award did nothing to disturb a prior arbitral award or court ruling. The arbitrator in the Recovery Action made findings as to liability.  Before an arbitral decision on damages was reached, Petitioner, BMNY and the concrete suppliers freely negotiated and

9

agreed to the Global Settlement, with a separate settlement agreement freely negotiated and agreed to between Petitioner and BMNY.  The Award interprets what portion of Petitioner's recovery under those two settlements is subject to the Settlement Agreement's waterfall provision.  The Award does not nullify, contradict or otherwise amend any prior arbitral award.

### B. Attorney's Fees

Respondents' request for attorney's fees is denied.  "Generally, in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Commodities & Mins. Enter. Ltd.*, 49 F.4th at 819.  "Section 9 of the FAA does not provide such statutory authority, because it makes no mention of the recovery of attorney's fees.  Still, a court retains inherent equitable powers to award attorney's fees when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.*  To ensure, however, that fear of an award of attorney's fees will not deter persons with colorable claims from pursuing those claims, there must be both "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the [court]." *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012); *accord Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson & Rosenthal P.C.*, No. 16 Civ. 4762, 2023 WL 5570618, at *7 (S.D.N.Y. Aug. 29, 2023).  Here, although Petitioner's arguments fail, the record does not support a finding that Petitioner acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Commodities & Mins. Enter. Ltd.*, 49 F.4th at 819.

10

SPA-11

## IV.     CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate the award is DENIED and

Respondents' cross-motion to confirm is GRANTED.  Respondents' request for attorney's fees is

DENIED.

The Clerk of Court is respectfully directed to close the motion at Dkt. 20 and to terminate

this case.

Dated: February 29, 2024
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

11

SPA-12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
FLINTLOCK CONSTRUCTION SERVICES, LLC,

                                    Petitioner,

                    -against-                                          23 **CIVIL** 1701 (LGS)

                                                                       **JUDGMENT**

ARCH SPECIALTY INSURANCE COMPANY, et al.,

                                    Respondents.
------------------------------------------------------------------X

       It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons

stated in the Court's Opinion and Order dated February 29, 2024, Petitioner's motion to vacate

the award is DENIED and Respondents' cross-motion to confirm is GRANTED. Respondents'

request for attorney's fees is DENIED; accordingly, the case is closed.

**Dated:**  New York, New York

          February 29, 2024

                                                       **RUBY J. KRAJICK**
                                            _____
                                                       **Clerk of Court**

                                       **BY:**      *K. mango*
                                            _____
                                                       **Deputy Clerk**

SPA-13



**United States District Court**
**Southern District of New York**

Ruby J. Krajick
*Clerk of Court*

Dear Litigant:

Enclosed is a copy of the judgment entered in your case. If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $605 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted.* Please see District Court fee schedule at https://www.nysd.uscourts.gov/programs/fees. If you are unable to pay the $605 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/.**

THE DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

THE CHARLES L. BRIEANT, JR.
UNITED STATES COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NY 10601-4150

Rev. 5/23/14

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (      )(      )

**NOTICE OF APPEAL**

Notice is hereby given that the following parties: _____

_____
(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the      ☐ judgment   ☐ order      entered on: _____
(date that judgment or order was entered on docket)

that: _____

_____
(If the appeal is from an order, provide a brief description above of the decision in the order.)

_____
Dated

_____
Signature*

_____
Name (Last, First, MI)

_____
Address          City          State          Zip Code

_____
Telephone Number          E-mail Address (if available)

_____

*Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.

Rev. 12/23/13

SPA-15

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (     )(     )

**MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL**

I move under Rule 4(a)(5) of the Federal Rules of Appellate Procedure for an extension of time to file a notice of appeal in this action. I would like to appeal the judgment entered in this action on _____ but did not file a notice of appeal within the required
                                          date
time period because:

_____

_____

_____
(Explain here the excusable neglect or good cause that led to your failure to file a timely notice of appeal.)

_____          _____
Dated:                                Signature

_____
Name (Last, First, MI)

_____  _____  _____  _____
Address                      City      State        Zip Code

_____          _____
Telephone Number                      E-mail Address (if available)

Rev. 3/27/15

SPA-16

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____          _____CV_____  (        )(        )
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-                                          **MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

I move under Federal Rule of Appellate Procedure 24(a)(1) for leave to proceed *in forma pauperis* on appeal. This motion is supported by the attached affidavit.


_____          _____
Dated                              Signature

_____
Name (Last, First, MI)

_____          _____    _____    _____
Address                   City      State      Zip Code

_____          _____
Telephone Number                   E-mail Address (if available)

Rev. 12/23/13

SPA-17

## Application to Appeal In Forma Pauperis

_____ **v.** _____     Appeal No. _____

District Court or Agency No. _____

| Affidavit in Support of Motion | Instructions |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.)<br><br>Signed: _____ | Complete all questions in this application and then sign it.  Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.<br><br>Date: _____ |

My issues on appeal are: (<u>required</u>):

1. *For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | <u>Spouse</u> | You | <u>Spouse</u> |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property (such as rental income) | $ | $ | $ | $ |

- 1 -

SPA-18

| | | | | |
|---|---|---|---|---|
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ | $ | $ | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance (such as welfare) | $ | $ | $ | $ |
| Other (specify): | $ | $ | $ | $ |
| **Total monthly income:** | **$ 0** | **$ 0** | **$ 0** | **$ 0** |

2. *List your employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

3. *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

SPA-19

4.    *How much cash do you and your spouse have?* $_____

*Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

**If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.  If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.**

5.    *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| | | Make and year: |
| | | Model: |
| | | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| Make and year: | | |
| Model: | | |
| Registration #: | | |

- 3 -

SPA-20

6.      *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |

7.      *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
| | | |
| | | |
| | | |

8.      *Estimate the average monthly expenses of you and your family.  Show separately the amounts paid by your spouse.  Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

| | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home)<br>      Are real estate taxes included?   ☐ Yes  ☐ No<br>      Is property insurance included?   ☐ Yes  ☐ No | $ | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ |
| Home maintenance (repairs and upkeep) | $ | $ |
| Food | $ | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |

- 4 -

| | | |
|---|---|---|
| Transportation (not including motor vehicle payments) | $ | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | |
| Homeowner's or renter's: | $ | $ |
| Life: | $ | $ |
| Health: | $ | $ |
| Motor vehicle: | $ | $ |
| Other: | $ | $ |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | $ | $ |
| Installment payments | | |
| Motor Vehicle: | $ | $ |
| Credit card (name): | $ | $ |
| Department store (name): | $ | $ |
| Other: | $ | $ |
| Alimony, maintenance, and support paid to others | $ | $ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ | $ |
| Other (specify): | $ | $ |
| **Total monthly expenses:** | $ 0 | $ 0 |

9. *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

   ☐ Yes    ☐ No    If yes, describe on an attached sheet.

10. *Have you spent — or will you be spending —any money for expenses or attorney fees in connection with this lawsuit?* ☐ Yes ☐ No

   *If yes, how much?* $ _____

- 5 -

SPA-22

11. *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12. *Identify the city and state of your legal residence.*

City _____   State _____

Your daytime phone number: _____

Your age: _____   Your years of schooling: _____

Last four digits of your social-security number: _____

| Print | Save | Reset Form |